# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

THOMAS D. BROWN, SR.,          )
3162 17TH Street N.W.

          :

       PLAINTIFF,               **CASE NUMBER: 07-CV0509 (RMU)**

VS.                        )

HENRY M. PAULSON, JR., SECRETARY   :
UNIITED STATES DEPARTMENT OF TREAUSURY

          )

       DEFENDANT.

          :

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now the Plaintiff, Hereinafter referred to as the Plaintiff, and moves this honorable court to deny the Defendant's Motion for Summary Judgment on the grounds that defendants have not met their burden under the provisions of Rule 56 of the Federal Rules of Civil Procedure. Defendant bases ifs Motion for Summary Judgment on the grounds that there are no genuine issues of fact which this court need decide. However, it will be shown that there are factual issues which should be decided by the Trier of fact in the instant case. Plaintiff's position is more fully explained in the attached memorandum of points and authorities.

# RECEIVED

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

_____ Date: _____

Thomas D. Brown, Sr., Disable and Retired
Photoengraver/ IPS
Independent Paralegal Specialist
3162 17th Street North West,
Washington, District of Columbia, 20010-2748
(202) 518-5553
(301) 237-1590

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THOMAS D. BROWN, SR.,<br>3162 17TH Street N.W.<br>Washington, 20010-2748 | ) | |
| | : | |
| PLAINTIFF, | | CASE NUMBER: 07-CV0509 (RMU) |
| VS. | ) | |
| HENRY M. PAULSON, JR., SECRETARY<br>UNIITED STATES DEPARTMENT OF TREAUSURY | : | |
| | ) | |
| DEFENDANT. | : | |

### PLAINTIFFS MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF HIS OPPPOSITION TO THE DEFENDANT'S
### MOTION FOR SUMMARY

### INTRODUCTION

This is a case arising under Title VII of the 1964 Civil Rights Act and the
Americans With Disabilities Act. Defendant in its motion for summary judgment
seeks the entry of summary judgment on the grounds that the plaintiff can not
prove he was discriminated against by the defendants. Defendants motion did not
covers the a ratings of "exceeded standards  from 1997 through 2000 until
Plaintiff filed an EEO Complaint against the agency thereafter the "ratings were
drop to fully sat they affected his grade  for potential promotions (See Ex.4
satisfactory performance evaluation for the period of November 20, 2002 through
2003, Plaintiff didn't receive 2004 rating ;(2) Whether Plaintiff was discriminated
against when he was denied of reasonable Medical accommodations in temporally
work hours from the of September through December; (2) whether Plaintiff was
discriminated against when request was denied for reasonable accommodation for
Requested by Upper Management; (3) Whether Plaintiff was discriminated against
on December 15, 2003 when he was issued a charge of leave with out pay; (4)
Whether Plaintiff was Discriminated against when he was issued a letter of
warning about an AWOL/ time and attendance on January 13, 2004; and

1

Date: _____

Thomas D. Brown, Sr., Disable and Retired
Photoengraver/ IPS
Independent Paralegal Specialist
3162 17th Street North West,
Washington, District of Columbia, 20010-2748
(202) 518-5553
(301) 237-1590

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS D. BROWN, SR.,<br>3162 17TH Street N.W.<br>Washington, 20010-2748 | ) |
| | : |
| PLAINTIFF, | CASE NUMBER: 07-CV0509 (RMU) |
| VS. | ) |
| HENRY M. PAULSON, JR., SECRETARY<br>UNIITED STATES DEPARTMENT OF TREAUSURY | : |
| | ) |
| DEFENDANT. | |
| | : |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Comes now the Plaintiff, Hereinafter referred to as The Plaintiff, and submits the following statement of material facts to which there is no genuine issue pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 108 of the Local Rules of Civil Procedure of the United States District Court of the District of Columbia:

1. Plaintiff, Thomas D. Brown, Sr., an employee of the Department of Treasury, whose position is located in the Photoengraving Branch Office received ratings in 98/1999 and the year 99/ 2000 of exceed standards. The ratings were signed off by 6 different people from Upper Management; but after the adverse effect of filing an EEO Complaint with the agency his evaluation were only fully satisfactory in the rating year of 01/2002 and 02/2003.

2. On or about February 28 or March 1, 2001 Plaintiff had started to work and experienced pain in his lower back as a result of a job related injury. As a result thereof Plaintiff reported to work late. Prior to that date Plaintiff had been

reported to work early. However in 1996 he began to experience back pain due to an on the job injury. This injury was aggravated by subsequent on the job injuries in 1996, 1998, 1999 2001 through 2004.

3.   As a result of his back injuries Plaintiff suffers from constant lower back pain, pain in back muscles, his joints and his legs. He has trouble bending, stooping, standing, pushing, pulling and sitting for long periods of time. He also suffers from headaches, high blood pressure, diabetes and blurred vision. He presently is on various types of medications for the pain he is presently experiencing.

4.   On August 6, 1996, Larry E. Rolufs, Director of Bureau of Engraving and Printing established a Flexible and Compressed Worked Schedule Program. This program required that every employee sign a memorandum designating his or her core work hours. Employees were allowed to work before or after their set duty hours and could earn credit hours for the time they worked prior to or after their set duty hours. This system is still in effect and Plaintiff is a Flextime employee. On or about August 6, 2001, Plaintiff was accused with fraud on his time and attendance sheets.

5.   However, although Plaintiff was on Flextime, on or about March 20, 2001, he was reprimanded for being two hours late. Moreover, it was not until April 18, 2001, that Plaintiff received a proposed notice that he was to be considered AWOL and docked for the time he was not at work. Plaintiff had no

**2.**

prior notice of any intention to place him on AWOL for his late arrival. Plaintiff thereafter filed an informal EEO complaint challenging the proposed Notice. On May 1, 2001, Robert Bishop, forty four days after the issuance of the AWOL, issued a memorandum which rescinded the Notice of April 18, 2001. On the same date Plaintiff met with Mr. Bishop and informed him that he would not sign the document, and should hands with him believing that the matter had been resolved. However, the Plaintiff was still charged with being AWOL allegedly because he would not sign the May 1, 2001, Memorandum.

6. On April 18, 2001, Plaintiff was given a Notice of Proposed Suspension for three calendar days. The basis for the suspension was contained in three specifications of charges:(1) Leaving the Section without Notifying the Supervisor; (2) Unavailable for work at the start of the shift and (3) Failure to follow instructions in a timely manner.

7. The charge that Plaintiff was not in the section on March 7, 2001 and had left without the Supervisor's permission is without merit since Plaintiff at the time in question had been on the job assignment and had completed the work and came back to the section.

8. The charge that Plaintiff was unavailable for work at the start of the shift, was not supported by the agency's own records. Plaintiff had reported to work at 6:58am and was requested to assist Mr. Robert Babel to down load information from a disk onto his computer. Plaintiff had stopped eating his breakfast, to assist Mr. Robert Babbel, When he finished assisting Mr. Robert Bable he returned to his work station and had resumed eating his breakfast when Mr. Bishop encountered him.

9. The third and final charge in the Notice of Proposed Suspension was that Plaintiff refused to meet Bishop in his Office and talk to him. In fact Plaintiff infofined Mr. Bishop that he had not had an opportunity to each his breakfast and that he had just taken his pain medication for the pain he was experiencing at that time. As soon as the pain subsided Plaintiff met with Mr. Bishop. Plaintiff was told that he was going to be suspended for three days from his job because he failed to follow proper safety procedures.

10. On July 14, 2001, Plaintiff was given a notice of a proposed suspension proposing to suspend him for 14 days. Plaintiff, responded to the Notice of Proposed Suspension and on September 6, 2001, he was again suspended for a period three days. The records of the Agency showed that Plaintiff was neither late for work or had left early for the dates in question.

11. On or about December 10, 2001, Plaintiff received an Employee Performance Appraisal of Fully Satisfactory.

12. Prior to Plaintiff receiving the fully satisfactory he filed three EEO Complaints with the Defendant. TD Number 99-1143, TD Number 96-1084, and TD 96-1300.

13. The evaluation was given to Plaintiff by Mr. Robert Bishop who at the time was the Acting Foreman of the Photo Litho Section. MR. Bishop was aware of Plaintiffs prior EEO activity since he testified as a principle witness in the

**4.**

hearing of Plaintiffs EEO complaint No. TD-96-1084.

14. During the period of the annual evaluation for the year 2000-2001 Plaintiff did not receive a mid-year evaluation and was not given any indication that his job performance nor was he informed of any areas of performance which would hinder his receiving an outstanding rating.

15. After he received the Fully Satisfactory rating Plaintiff filed an EEO Complaint with his agency on January 28, 2002 and the Report of Investigation was issued on or about October of 2002.

16. As a result of the continued harassment in the form of adverse actions and continued hyper supervision of Plaintiffs work product, he was hospitalized twice once in January 2002 and again in February of 2003. The Plaintiff was clearly working in a hostile working environment.

Respectfully Submitted,

Thomas D. Brown, Sr.,
10/25/2007

Thomas D. Brown, Sr.,
Photoengraver/IPS, Disable
Independent/ Paralegal Specialist
3162 17th Street N.W.
Washington, D.C. 20010
(202) 518-5553
(301) 237-1590

5.

(5) Whether Plaintiff was discriminated against on January 13, 2004; when he was insulted and threaten by a co-worker; and (6)Whether plaintiff was discriminated on February 17 2004 when he was told by his supervisor his training request was denied; and he was no longer on light duty or retaliated against when his supervisor denied him disability; and(7) Whether Plaintiff was discriminated against and harassed, retaliated against and subject to hostile work environment when; and (8) Whether plaintiff was discriminated against due to his disability and subjecting him to hostile environment when the agency failed to accommodate his disability; and Whether Plaintiff was subject to a hostile work environment because he was subject to close supervision by his supervisor after he filed an EEO Complaint and (9) On March 5, 2004 and completing a assignment by March 9, 2004; Whether Plaintiff was subject to a hostile working environment when the agency failed to accommodate his disability. Also, he was falsely charged with AWOL time and attendance fraud. However, it will be shown below the defendants are mistaken. Plaintiff never changed Tour Duty Hours from 7:15am-3:15pm.

## I

## STANDARDS OF REVIEW

### A.

## STANDARDS FOR AN AWARD OF SUMMARY JUDGMENT

Under the provisions of Rule 56 of the Federal Rules of Civil Procedure the moving party bears the burden of establishing the absence of any genuine issue of material fact and the evidence must be viewed in the light most favorable to the non-moving party. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). In the instant case defendant have not to meet its burden under the provisions of Rule 56(c) of the Federal Rules of Civil Procedure. Defendant's motion does not establish the absence of any genuine issues of material fact as required by Rule 56

Of the Federal Rules of Civil Procedure. Defendants' motion simply restates the

unsubstantiated and often self serving claims of Plaintiffs supervisors who have an

interest in the outcome of the litigation.

    In <u>Sartor v. Arkansas Gas Co.,</u> 321 U.S. 62o (1944) the United States

Supreme Court stated the following concerning the use of opinion evidence:

> The rule has been stated "that if the court admits the testimony,
> when it is for the jury to decide whether any, and if any, what,
> weight is to be given to the testimony.... the jury, even if such
> testimony be uncontradicted, may exercise their independent
> judgment" ......................"the mere fact that the witness is
> interested in the result of the suit is deemed sufficient to require
> the credibility of his testimony to be submitted to the jury. 321
> U.S. at 628.

    In the instant case the supervisors and agency personnel have an interest in

the result of this suit and their testimony should be heard by the jury. In

<u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242 (1985) the United States Supreme

Court reached the conclusion that opinion evidence should be heard by a jury

stating:

> Our holding that the clear-and-convincing standard of proof
> should be taken into account in ruling on summary judgment
> motions does not denigrate the role of the jury. It by no means
> authorizes trial on affidavits. Credibility determinations, the
> weighing of evidence, the drawing of inferences from the facts
> are jury functions, not those of a judge whether he his ruling
> on a motion for summary judgment or for a directed verdict. The
> evidence of non moving party is to be believed, and all
> 'justifiable inferences are to be drawn in his favor, Adickles, 398
> U.S. at 158-159. Neither do we suggest that the trial courts
> should act other than with caution in granting summary
> judgment or that the trial court may not deny summary
> judgment in a case where there is reason to believe that the
> better course would be to proceed to a full trial. 477 U. S. at 235-
> 255 (Emphasis added).

3

being suspended for three days for the period of September 12-17 2001. Also On

or around February 17, 2003 the agency knew, was aware, submitted as well as

admitted to the fact that they were in contempt of this Court by Ross Morres's

Affidavit admitting, by saying, 'There is no documentation submitted to the

beginning or the end of a light duty period for the Plaintiff. See Ex.7 pg.24 1-

9bPlus, the Defendant's claim that Plaintiff did not raise a claim that the issue of

failure to accommodate in his complaint. However, the matter was subject to

investigation by the Investigator and was referenced in the agency's final decision.

(See Ex.2 pg.5-6). Moreover, Plaintiff in his EEO Complaint complained of being

discriminated against because of his disability. This claim arose out of the

determination by Mrs. Leone Gracely in her memorandum to Cheryl Molock, the

safety officer at the Agency. (See Ex.7 pg.5). The agency has been aware of Plaintiffs

physical condition and the need for some accommodations, it is clear that the

agency was aware of the need to accommodate Plaintiffs disability. In fact

Defendant has not established any basis for this court to conclude that Plaintiff did

not include in his EEO complaint information relating to the Agency's failure

to accommodate his disability See Ex.7 and disciplinary action being taken against

him for alleged Time and Attendance Fraud.


## ARGUMENT

### II.

### PLAINTIFF SUBMITS THAT HE WAS SUBJECT TO REPRISAL BY THE AGENCY

In the instant case the Defendant claims that the Plaintiff can not establish a

prima facie case of reprisal under the provisions

**4**

of Title VII of the Federal Rules of Civil Procedures. Once again the Defendant's

claim that PlaintiffWasn't treated differently than other similarly situated white

employees). In <u>Texas Dept. of Community Affairs v. Burdine,</u>  450 U.S. 248

(1981) the United States Supreme Court stated the following concerning the

shifting burden of proof in a disparate treatment case under Title VII:

> First, the plaintiff has the burden of proving by the
> preponderance of the evidence of a prima facie case of
> discrimination. Second, if the plaintiff succeeds in proving a
> prima facie case, the burden shifts to the defendant to
> "articulate some legitimate, nondiscriminatory reason for the
> employee's rejection". Third, should the defendant carry this
> burden, the plaintiff must then have an opportunity to prove by a
> preponderance of the evidence that legitimate reasons offered by
> the defendant were not its true reasons, but a pretext for
> discrimination. The nature of the burden that shifts to the
> defendant should be understood in light of the plaintiffs ultimate
> burden of persuading the Trier of fact that the defendant
> intentionally discriminated against the plaintiff remains at all
> times with the plaintiff ... The burden that shifts to the
> defendant.... is to rebut the presumption of discrimination by
> introducing evidence that the plaintiff was rejected, or someone
> else was preferred, for a legitimate nondiscriminatory reason...
> To accomplish this, the defendant must clearly set forth, through
> the introduction of admissible evidence the reasons for the
> plaintiff's rejection. The reason given must be legally sufficient
> to justify a judgment for the defendant.45o U.S. at 235-255.

Defendant in its motion seeks summary judgment on all of Plaintiff s

causes of action. As a basis for summary judgment defendant claims that he can

not prove that in any instance he was discriminated against by it. However, it is

the defendant who has the burden of proving the absence of any genuine issue of

fact and that it is entitled to summary judgment as a matter of law. In order to so

the defendant must show that it did not intentionally discriminate against him.

Plaintiff submits that the defendant's motion for summary judgment is not legally

sufficient to justify an award of summary judgment,

5

Furthermore, in order for Plaintiff to make out a prima facie case of retaliation under Title VII she must show: (1) protected participation or opposition under Title VII known by the alleged retaliator; (2) An adverse employment action by his employer; and (3) Proof of a causal connection between the protected activity and the adverse employment action.Grant v. Bethlehem  Steel Corp.,  622 F.2d 43, 46 (2d Cir. 1980). Proof of the causal connection may be established indirectly by showing that the protected activity was followed closely by discriminatory treatment or directly through evidence of retaliatory animus directed against the plaintiff by defendant. Davis v. State University of New York,  802 F.2d 638, 642 (2d. Cir. 1986); Hochstadt v. Worcester Foundation for Experimental Biology Inc.,  425 F. Supp. 318, 328-329 (S.D. Ohio 1983). Evidence of a retaliatory animus can be established by showing that the defendant did not comply with its polices and procedures. Sorrells v. Veterans Admin.  576 F. Supp 1264, 1265 (S.D. Ohio 1983). Moreover, an adverse personnel action taken after learning of the protected activities, to the extent that it varies from stated

procedures violate section 704(a) of Title VII. EEOC v. Locals 1

U. 0 eiflg„ 438 F. Supp. 876, 884 (¹977); Frances v. American TelePhone  86 Tel. Co., Long Lines  DePt., 55 F.R.D. 202, 207 (D.D.C. 1972). In the instant case the Agency and its representatives does not establish the facts that they should be entitled to judgment as a matter law.

Plaintiff claims that he was retaliated against by the defendant when he was evaluated as fully satisfactory in 2001/02 and in the rating year of 2002/03.  In order to establish aprima <u>facie</u> case of retaliation, the plaintiff must show by a preponderance of evidence (1) that he engaged in protected activity; (2) that he was subject to an adverse action by his employer, and (3) that there is a causal connection between the adverse action and the protected conduct. <u>McKenna v. Weinberger,</u> 729 F.2d 783, 790 (D.C. Cir. 1984). Therefore defendant's motion should be denied.

## C

## <u>STANDARDS FOR A MOTION TO DISMISS</u>

Defendant also seeks to have this court dismiss the complaint under the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure in that it allegedly fails to state a cause of action upon which relief can be granted. However, under Rule 12(b)(6) a complaint can be dismissed for failure to state a claim for relief only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief <u>Conley v. Gibson,</u> 355 U.S. 41, 45-46 (1957). Furthermore it is recognized that the factual allegations of the complaint must be presumed true and liberally construed in favor of the Plaintiff. <u>Shear v. National Rifle Ass'n of Am.,</u> 6o6 F.2d 1251, 1253, (1979)

## D

## <u>STANDARDS OF PROOF UNDER THE<br>REHABILITATION ACT</u>

In order for the Plaintiff to establish a prima facie case under the Rehabilitation Act (ADA) he must show the following:

In order for the Plaintiff to establish a prima facie case under the Rehabilitation Act (ADA) he must show the following: (1) he has a disability whose limitations are known to the Agency; (2) He is qualified to perform the essential functions of his position with or without accommodation; (3) he experienced an adverse job action and (4) the circumstances surrounding the adverse job action indicate that it is more likely than not that his disability was the reason for the adverse action.

## III.

## ARGUMENT

## 1.

## THE AGENCY'S TIMELESS CLAIMS IS WITHOUT MERITS

Defendant claims, in its Motion to Dismiss and for Summary Judgment , that the Plaintiff did not raise the issues of failure to accommodate or being falsely charged with the time and attendance fraud.(See Defendant's Motion at pg. 4). Defendant claims that it is entitled to dismissal of Plaintiffs fifth, sixth and seventh claims of his complaint.' The basis for this claim is that Plaintiff did not timely raise these issues with

---

'Plaintiff s complaint laid out only four claims discrimination because of race, discrimination because of disability, hostile work environment and reprisal. Defendant has enlarged these claims to seven claims. Under the Defendant's system Plaintiffs fifth claim is that he was discriminated against on the basis of his disability and that the agency discriminated against him because of his race and subjected him to a hostile environment. Plaintiff's sixth claim is that he was subjected to Gloss supervision by his supervisor since the filing of his EEO complaint and his seventh claim is that he was falsely charged with time and attendance fraud. However, in the instant case there are only three claims discrimination based upon Plaintiffs disability, retaliation, and hostile work environment based on disability. Plaintiff concedes his claim of race discrimination as well as any issue relating to the annual evaluations of 1999 and 2000. (See Plaintiffs Complaint at pgs. 8-10)

the agency or file the claims with the Office of EEO prior to initiating this complaint.

**8**

However, because of the past pattern and practice of Discrimination, Plaintiff Amended his complaints please note the Defendants position is without merit. On January 14, 2003 the Plaintiff filed his informal EEO Complaint with the Agency alleging that he had been discriminated against on the basis of his disability. (See Ex.6). On or around January 26, 2004, Plaintiff filed his formal complaint of discrimination. See Ex.7In fact Plaintiffs EEO complaint raised the issue of his disability and the issue of attendance fraud, please note on or around December 15, 2003. First of all Plaintiff raised the issue of his disability in his EEOC complaint stating that he had been discriminated due to his disability. See Ex.5In during the time Plaintiff filed his EEO Complaint , the Defendant by issued a Memorandum dated March 24,2004 30 days suspension in which it was rescinded and dismissed by the Manager Mr. Ross Moress See Ex.8then I was removed 5/5/04 by Judith D. Myers, Chief, of Engraving Division See Ex. and  the Allegations of insufficient Medical Documentation See Ex.10 pg.1,and fitness for duty examine See. Ex.9 pg 1 That led to his suspension and removal from Fed. Service on June 17, 2004 (See Ex.12 This Report served as the basis for the recommendation that disciplinary action be taken against the Plaintiff. On or around May 5, 2004 the Agency issued a Memorandum recommending that Plaintiff be subject to disciplinary action in the form of a 30 day suspension and removal. On or around May 26, 2004 Plaintiff answered, please refer to the answer by Attorney Karl w. Carter to the agency See Ex.11. Agency issued Plaintiff a Notice of Proposed Suspension and removal. On August 18, 2004 the agency disrespected, and humiliated the Plaintiff in front of all Management and friends of the Plaintiff, took his badge then they terminated him on August 18, 2004 and escorted him out of the building by two Police Officers like he was convicted criminal. Thus, the claim that the Agency did not have notice of Plaintiffs claim relating to Medical Documentation is without merit. (See Ex.15pg.6

**9**

Thus, in Title VII case the plaintiff must set forth specific facts showing there is a genuine issue for trial. Skelton v. Acton,  668 F. Supp. 25, 29 (D.D.C. 1987). The establishment of a prima facie case helps the judge determine whether the litigants have created an issue of fact to be determined by the jury. Texas Dept. of Community Affairs v. Burdine,45o U.S. 248, 255 n.8. Thus, Plaintiff submits that the evidence will show not only are there questions of material fact which should be decided by a jury, but also if the evidence is viewed in the light most favorable to the plaintiff, it would show that the defendant discriminated against him. Plaintiff claims that he was retaliated against by the defendant when he was evaluated as fully satisfactory in 2001-2002, 2002-2003 (Ex.2See Ex.3Civil Case No. 98-2318(JR). In order to establish a prima facie case of retaliation, the plaintiff must show by a preponderance of evidence that he engaged in protected activity; (2) that he was subject to an adverse action by his employer, and (3) that there is a causal connection between the adverse action and the protected conduct. McKenna v. Weinberger,  729 F.2d 783, 790 (D.C. Cir. 1984). Therefore defendant's motion should be denied.

**B.**

## TITLE VII STANDARDS OF PROOF

This is a case arising under Title VII of the 1994 Civil Rights Act. Plaintiffs case is based upon the disparate treatment theory under Title VII (i.e., that he was discriminated against by the Agency 1964 Civil Rights when he was subject to the following adverse personnel actions by the Defendant: When he was placed on AWOL on March 20, 2001; (2) When he was suspended for three days on May 18, 2001: and (3) When he was suspended for three days on September 6, 2001.

**10**

On or around March 3, 2004 the supervisor harassed and retaliated on the Plaintiff for an assignment that he could not perform because his high blood pressure, high Sugar level was 377 and his lower back. In spite of doctor's Orders and recommendations the Supervisor Mr. Patrick Reidy told the doctor and myself on a three way conference called when he said,' 'If Mr. Brown comes back to the Photo section I will put him back on the computer.' March 9, 2004. At that point and time the residing doctor got afraid because Mr. P. Reidy was being difficult to work with, and insubordinant. I was told by the doctor to stay in the health unite until further notice BEP Form 8519 March 19, 2004 then suspended See Ex.15 ) In order for Plaintiff to make out a prima facie case of retaliation under Title VII he must show: (1) protected participation or opposition under Title VII known by the alleged retaliator; (2) An adverse employment action by his employer; and (3) Proof of a causal connection between the protected activity and the adverse employment <u>Action</u> <u>. Grant v. Bethlehem Steel Corp.,</u> 622 F.2d 43, 46 (2d Cir. 1980). Proof of the causal connection may be established indirectly by showing that the protected activity was followed closely by discriminatory treatment or directly through evidence of retaliatory animus directed against the plaintiff by defendant. <u>Davis v. State</u> <u>University of New York,</u> 802 F.2d 638, 642 (2d. Cir. 1986); <u>Hochstadt v. Worcester</u> <u>Foundation for Experimental Biology Inc.,</u> 425 F. Supp. 318, z that the defendant did not comply with its polices and procedures. <u>Sorrells v. Veterans Admin.</u> 576 F. Supp 1264, 1265 (S.D. Ohio 1983). Moreover, an adverse personnel action taken after learning of the protected activities, to the extent that it varies from stated procedures violates section 704(a) of Title VII. <u>EEOC v. Locals 14 and 19 Intern. U. of Opera.</u> <u>Eng.,</u> 438 F. Supp. 876, 884 (1977); <u>Frances v. American Telephone 8v Tel. Co., Long</u> <u>Lines Dept.,</u> 55 F.R.D. 202, 207 (D.D.C. 1972).In fact there are three different instances which have given rise to the Plaintiffs claims of

**11**

reprisal by the Defend⟁. In the instant case defendant's c⟁ that it did not

retaliate against plaintiff is a mere pretext and does not establish that they should

be entitled to judgment as a matter law.

## THE JANUARY 13, 2004 AWOL CHARGE

Defendant claims that Plaintiff cannot establish a charge of reprisal because

Plaintiff can not establish the second and third elements of a prima face case of

reprisal.' Those two elements are as follows (1) that Plaintiff was subject to an

adverse action and (2) that there was a causal connection between the adverse action

and the protected activity of March 19, 2004. First of all it is admitted by the

Defendant that Plaintiff was subject to an adverse action by his employer, that he was

charged AWOL for reporting (2 and ¾) in two and three quarter hours late. Also, on

the date of January 23, of 2002 - February 6, 200 of (See Ex.16 )once again Mr.

Robert Bishop and Mr. Patrick Reidy cause the Plaintiff to go to the Hospital. Also

not following Court Oder leave. See Ex.16 pg.1-6, instead he was  AWOL on 13th 14th

of March 2002 . An AWOL is defined, under the understanding of the provisions of

Chapter 63o, the Bureau of Printing and Engravings Personnel Manual, as an

absence from duty not authorized by an employees' supervisor. It may include

absences from the work area without approval even though the employee is present

in the work building. AWOL may be used as the basis for disciplinary action. (See

Ex.17)

---

[2]In order for Plaintiff to make out a prima facie case of retaliation under Title VII he must show: (1) protected participation or opposition under Title VII known by the alleged retaliator; (2) An adverse employment action by his employer; and (3) Proof of a causal connection between the protected activity and the adverse employment action. Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir. 1980). In the Counselor's report she( Mrs. Renata Robinson) said,' ' First line Supervisor response was he did not have any thing to do with that situation. Second line supervisor gave the Plaintiff a letter of warning and suspension thereafter then his removal from the Federal Services at the Bureau of Engraving and Printing.

Moreover, AWOL should be charged under the following circumstances:(1) When an employee is absent without permission; (2) When the employee has not provided a satisfactory explanation or documentation for the absence from duty. In the instant case the agency did not follow the fist step as to when an AWOL should be charged. Plaintiff had informed his supervisor that he was late to work on the date in question due to the fact that he had been suffering from back pains. At the heart of this matter was the only going effort on the part of the Plaintiff to have the agency accommodate his disability. On May 23, 1996 the agency was informed by Dr. Laura Welch that Plaintiff could do his regular job but with certain restrictions.(Ex.18) On July 11, 1996 Dr. Welch informed the agency it had not accommodated Plaintiffs request for an altered work schedule in order to allow him access to physical therapy. (Ex.19). The failure to the agency to provide any form of accommodation to the Plaintiff was continued from the period of 1996 through 2005. (See Ex. 20). Plaintiff therefore provided a satisfactory explanation for his absence.

Furthermore, the Agency did not follow the applicable procedures in charging an AWOL. It did not issue and AWOL charge on a BEP form 8017 (AWOL Charge Notice), nor was any determination was made as to whether Plaintiff had provided a *satisfactory* explanation or documentation for the absence. Defendants offered to remove the AWOL if the Plaintiff agreed to follow the call in procedure and that his failure to accept the offer resulted in the institution of adverse action being the Plaintiffs decision. As a result of the continued harassment in the form of adverse actions and continued hyper supervision of Plaintiff work product, he was hospitalized twice once in January of 2002 and again in February of 2003 was clearly working in a hostile environment. On January 13, 04 Plaintiff was again insulted and threaten by a co-worker Ms. Marjorie Freeman. Ms. Freeman invited the Plaintiff to her backside by *saying to him kiss her black ass.* See Ex. 21

Plaintiff filed an EE Complaint relating to the above incidents and adverse action to Management. Mr. Bob Bishop approached me (Plaintiff ) and said,' ' meet me in my office with your supervisor for a scheduled 1:00pm meeting with Ms. Marjorie Freeman.' On or around the 13th day of January of 2004. Management did nothing about the violations of Ms. Marjorie Freeman, nor the first line supervisor (Mr. Patrick Reidy) and this suit followed. The agency position is without merit, Moreover, as noted above the agency had not followed the proper procedure for an AWOL, and how to address an insult and threaten from a co-worker should be charged and procedure to be followed if an AWOL and threat is to be charged. Furthermore, in light of the fact that supervisor made the determination that the explanation to be offered was satisfactory; the offer made to the Plaintiff was illusionary. The decision always remained with the agency to discipline Plaintiff The AWOL was clearly in the imposition of adverse action. Also the claim that there is no causal connection because it was 17 months since the filing of Plaintiffs prior EEO complaints is without merit. Robert Bishop Plaintiff's second line supervisor admitted that he was aware of Plaintiffs EEO activity. At the heart of this matter was the only going effort on the part of the Plaintiff to have the agency accommodates his disability. On May 23, 1996 the agency was informed by Dr. Laura Welch that Plaintiff could do his regular job but with certain restrictions. On July 11, 1996 Dr. Welch informed the agency it had not accommodated Plaintiffs request for an altered work schedule in order to allow him access to physical therapy. The failure to the agency to provide any form of accommodation to the Plaintiff continued from the period of 1996 to 2004. (See Ex.20 Not only was it aware of Plaintiffs disability but had not accommodated his disability See Ex.  It was aware at the time of this incident that Mr. Brown was suffering from a disability and that required altered work schedule. While claiming that the imposition of the disciplinary action was the Plaintiffs fault it fails

to consider the fact ﹍ Plaintiff was suffering from a dis﹍ ﹍ty and that it (Agency) had failed to provide any accommodation to the Plaintiff (See Ex.21). While claiming that Plaintiff should have reported his health related situation to his supervisors, the agency had for a period of over five years been aware of Plaintiffs disability and had done nothing to accommodate it. During this period Plaintiff had pending before this court his suit Se Ex.4 and 5 against the agency for race discrimination.[3] Plaintiffs supervisor Mr. Robert Bishop was aware of the Plaintiffs prior EEO activity, he was a principle agency witness in one of the Plaintiffs EEO Complaints.' Thus there is a causal connection and Plaintiff was retaliated against when he was given an AWOL

## **THE MAY 5, 2004 NOTICE OF PROPOSED  REMOVAL**

Plaintiff was subject to a Thirty day suspension which was allegedly based upon the claim that he did not provide sufficient Medical documentation. Since 1996 until he was fired on June 18, 2004; Plaintiff Submitted to Judith D. Myers, Chief of Office of Engraving  his response. See Ex.22 in spite of the Medical evidence the agency continued to subject the Plaintiff to a hostile work environment by supporting and allowing Ms. Marjory Freeman on numerous occasions to violate the Plaintiff rights with unwelcome and unwanted behavior. (See Ex.23 Manual for table of Offences) Plaintiff reported the incident to his first line supervisor Mr. P. Riedy and second line supervisor Mr. R. Bishop, a Memorandum for Medical Documentation and that he failed to follow the instructions of his supervisors. In order for Plaintiff to make out a prima facie case of retaliation under Title VII he must show: OD protected participation or opposition under Title VII known by the alleged retaliator;(2) An adverse employment action by his employer; (3) Proof of a causal connection between the protected activity and the adverse employment action.

---

See CA. No. 98-2318 the Agency paid the Plaintiff damages and settled any all claims of the Plaintiff on (See Ex.11)

Please take notice of the ongoing Pattern and Practice of Discrimination by the Agency

Grant v. Bethlehem Steel  Corp., 622 F.2d 43, 46 (2d Cir. 1980). In the instant case it is

well established that the Plaintiff had engaged in protected EEO activity. Plaintiff, was

subject to an adverse action, he was suspended for three days from work. On April 18,

2001 Plaintiff was given a Notice of Proposed Suspension. In connection with The Notice

of Proposed Suspension raised three issues which served as a basis for the Plaintiffs

Suspension the following claims: (1) Plaintiff was absent from his duty station without

the permission of his supervisor on March 7, 2001; (2) That Plaintiff was unavailable for

work at start of the work shift; and (3) That Plaintiff failed to follow the instructions of

his supervisor.

Plaintiff submits that he was not absent from his duty station without the

permission of his supervisor, on March 7, 2001. See ROI-, Ex.6 counselor report In fact

Plaintiff had merely gone for a walk in order to relieve the pain in his lower back.

Plaintiff had suffered  an on the job injury which affected his ability to perform the

duties of his position. .

On September 10, 1998 the agency was informed by Dr. Laura Welch that Plaintiff

sustained a back injury and could not do his regular job (Ex.24) On December 15,

1998 Dr. Welch informed the agency it had not accommodated Plaintiffs request for

the tens unit an altered work schedule in order to allow him access to physical

therapy. (Ex.25. The failure to the agency to provide any form of accommodation to

the Plaintiff continued from the period of 1996 to 2005. Please review Plaintiff Affidavit

from 1996 through October 5, 2005 (See Ex.5 and 20). In fact the agency had been on

notice for a period of five years that Plaintiff would need to be able to leave his work

station in order to accommodate his disability.

**16**

During this period Plaintiff had pending before this courts his suit from the "Union" and the Fed. Courts against the agency for race discrimination.' Plaintiffs supervisor Mr. Robert Bishop was aware of the Plaintiffs prior EEO activity, he was a principle agency witness in one of the Plaintiffs EEO Complaints.° Thus there is a causal connection and Plaintiff was retaliated against when he was given an AWOL in each instance it is submitted that the reasons submitted by the agency are without merit.

Although, it was claimed that Plaintiff was running late the agency knew and its supervisors new well in advance of the Plaintiff's disability, the agency also claims that the Plaintiff failed to follow a direct order of his supervisor. As to the alleged claim that Plaintiff was already in route to his job. The next claim is that Plaintiff failed to follow a direct order of his supervisor and that he did not report to work and his supervisor until 2 ¾ quarter's of an hour . Plaintiff did not refuse to meet with his supervisor, in fact he went to meet with him as soon as he made confirmation with First line supervisor.

---

See CA. No. 98-2318 the Agency paid the Plaintiff damages and settled any all claims of the Plaintiff on (See Ex.4) Even though, Agency was on notice about Plaintiff's Disability. As a result of the continued harassment in the form of adverse Actions and Intentional Discrimination on the Plaintiff, in the form hyper supervision of Plaintiff work product, he was hospitalized twice once January 2002 and again in February of 2003. The Plaintiff was clearly working in a hostile working environment.

See Ex. 12

C.

## **THE SEPTEMBER 6, 2001 THREE DAY SUSPENSION OF INTENTIONAL DISCRIMINATION BY THE AGENCY**

Plaintiff was suspended for three days on September 6, 2001. The reason given the

three day suspension because he had engaged in: (1) Conduct unbecoming a Federal

Employee; Failure to Report to An Assignment in a Timely Manner and (3) Unauthorized

Absences. In each instance it is submitted that the Defendants position is without merit.

In order for Plaintiff to make out a prima facie case of retaliation under Title VII she

must show: (1) protected participation or opposition under Title VII known by the alleged

retaliator; (2) An adverse employment action by his employer; and (3) Proof of a causal

connection between the protected activity and the adverse employment action. Grant v.

Bethlehem Steel Corps, 622 F.2d 43, 46 (2d Cir. 1980). In the instant case it is well

established that the Plaintiff had engaged in protected EEO activity. Plaintiff was subject to

an adverse employment action by his employer he was suspended for three days. There was

a causal connection between Plaintiffs protected activity and the adverse action. In the

instant case Plaintiff had suffered on the job injury in March of 1996-2004-2005.

Defendant's were aware of the limitations (accommodations necessary for the work)

placed upon the Plaintiff by his doctors. In May of 1996, Dr. Canete was informed that the

Plaintiffs condition had improved to the point that he could return to work and that he

could at lease sit for an hour without spasm and perform activities of

daily living around the house. In February 12, 1999 the Agency was again

informed that the Plaintiff had had Some recurrence of leg pain and ridiculer symptoms

since back at work and that he should avoid prolonged bending. (See Ex.26)

**18**

In May of 1997 the agency was again informed that Plaintiffs back injury limited his

ability to lift any object and that he had limited forward flexion, lateral bend and

that he was limited in his ability to sit for prolonged periods. (See Ex.27). On or

about September 25, 1998, Plaintiff s physician sent a letter to the Agency,

informing the Bureau that since the Agency was unable to accommodate the

restrictions imposed upon the Plaintiff, of lifting no more than 5lbs; sitting for no

longer than 2 hours, no bending, stooping, twisting, pushing, and pulling, he

would not be able to return to work until she examined him again. Although he

was unable to return to work the Agency demanded that he do so and his doctor

released him back to limited duty under the following conditions: to alternate

standing, sitting and walking. (Ex.28).

On December 17, 1998, Plaintiff was released to his regular job with the stipulation

that he is able to take a 30 minute break from standing after 2 hours and that he is

able to take a 3o minute break after sitting one hour. He did not have to stop work

during the 3o minute break just work in a different position.(See Ex.29) On

January 19, 1999, See Ex.3o the Agency was again informed of the limitations and

restrictions placed upon the Plaintiff, these restrictions were in place when he was

sent out on the assignment of June 20, 2001. (See Ex.31).

Plaintiff was suspended on September 6, 2001 for conduct unbecoming a

Federal Employee, when he was sent on a photo shoots at the United States

Capitol.

**19**

There was *no complaint* about Plaintiff not completing the job assignment on that day. The complaints involved Plaintiffs alleged unprofessional attitude which concerned complaints by the Plaintiff of having to walk too much, that his back hurt. These complaints were mixed with the usual concerns of a photographer such as lighting, the effect of putting a $10.000.00 camera through an X-Ray Machine and full of film in a camera as well as the location of the shoot. The mixture of the normal complaints of a Professional Photoengraver with that of a man suffering from reoccurring pain due to his back injury is clear in this case. What is clear the agency was well aware that if it sent Plaintiff injury on such an assignment it would require prolonged periods of walking, bending, standing, and stooping. These postures were strictly forbidden by his Doctors in order to accommodate his disability. This is the true meaning of Intentional Discrimination cause by the agency. *Intentional Discrimination* **by the Agency**


Moreover, the claims by the agency that Plaintiff had engaged in seven occasions of unauthorized absences are likewise without merit. The dates in question are as follows: (1) October 8, 1999 Plaintiff was allegedly late to work; (2) March 29, 2000, Plaintiff allegedly left early from work; (3) July 10, 2000, Plaintiff allegedly arrived late and left early;(4) July 12, 2000, Plaintiff allegedly arrived late to work; (5) August 22, 2000, Plaintiff allegedly left work early; (6) September 1, 2000, Plaintiff allegedly left work early; and (7) November 30, 2000, Plaintiff allegedly arrived late for work. To support its claim the Defendant used three documents: (1) the Employee's Bi-Weekly Time Sheet; (2) The Supervisor' s Daily Calendar; and (3) The Security Card Record. However, as will be shown below there is no evidence in

**20**

these official records to    port the claims of the Defendant

. Defendant in its Notice of Decision claimed that the there were seven (7) occasions that Plaintiff did not work a full eight hour day and did not take any type of leave to excuse the absence. It claimed that it relied upon a cross-reference of the personal time and attendance sheets with the Bureau's official badge reader to account for Plaintiff's entrances and egresses form the Agency.

The claim that Mr. Brown was late for work on October 8, 1999 is not supported by the record submitted. The Employees Bi-Weekly Time Sheet for the week ending October 8, 1999 shows that Mr. Brown was charged annual leave for the following days October 6,7, and 8, 1999. A note at the bottom of the Employee's Bi-Weekly Timesheet states the following:

> Employee was charged 25 hours Annual Leave this pay period. Please restore the 25 hours back to his Annual leave, and change the 25 hours to Official Business - Thank you. (See Ex. 25)7

Moreover, the Supervisor's Daily Calendar makes no reference what so ever of the Plaintiff being late to work on October 8, 1999·(See Ex.1) Since the time and attendance sheet shows that Plaintiff was not at work on the day in question but on Official Agency Business there is no basis whatsoever to

———————————————

Although it was requested that Plaintiffs 25 hours ca leave be restored the agency has not done so to date.

support the claim that he was late for work on that date.(See Ex.2).

The claim that Mr. Brown left work early on March 29, 2000 is not supported by the record. The Employee Bi-weekly Time Sheet for the pay period ending April 8, 2000 shows that Mr. Brown worked a full eight hours for the day in question.(See Ex. 3). Moreover, although the security record shows that he left a half an hour early he followed the general office procedure of charging the time to his annual leave as required by the Acting Supervisor Ms.Rita Sorsdal. See Ex. 36& 37) Moreover the Supervisor's Calendar for the date of March 29, 2000 has no record of Mr. Brown being late for work.(See Ex.4)

Thus, it is clear that there is no evidence to support the Agency's claim that Plaintiff was late to work on April 8, 2000, particularly when the Employee's Timesheet authorizing the use of annual leave for one half hour by the Plaintiff was signed by his Supervisor Mr. Robert Bishop. (See Ex. 5)

The claim that Mr. Brown arrived late for work and left early on July 10, 2000 is not supported by the record.. The Employee Bi-Weekly Time Sheet for the Pay Period ending July 15, 2000 shows that Mr. Brown's Tour of Duty was from 7:15 to 3:15. and that he worked a full eight hour day from 6:3o am to 2: 30 p.m.(See Ex.6). The Security Card Record does not reflect the times listed

**22**

on the Security Card Record. The Security Card Record shows that on the date in question Plaintiff checked in exactly at 7:2o:16 a.m., and left the building at 14:16: 16 p.m.(See Ex.7). Moreover, the Supervisor's Calendar does not support the charge made by the agency. The Supervisor's Calendar makes no reference whatsoever to the Plaintiff being late, but shows that the employees in the unit were scheduled for two hours of training from 10-12 in the morning and 1-3 in the afternoon. (See Ex.8) There is a clear contradiction between the agencies records used to develop this particular charge which to this date remains unresolved. Finally, it should be noted that Plaintiffs Supervisor

Robert Bishop certified that the time worked and leave taken through the end of the time period was correct. (See Ex. 9). He was the same person who proposed that Plaintiff be suspended for 14 days. (See Ex. 10).

The claim that Mr. Brown arrived late for work on July 12, 2000 is not supported by the record. The Employee Bi-Weekly Time Sheet for the Pay Period ending July 15, 2000 shows that Mr. Brown worked eight hours on the date in question.(See Ex. 11). The time recorded on the Employee's Bi-Weekly Time Sheet was 6:30 to 2:3o. This time was certified by Plaintiffs Supervisor Robert Bishop.(See Ex.12 50). The Security Card Records does not conform to the Employee Bi Weekly Time Sheets., it shows that Plaintiff arrived at work at 10:12:10 a.m. and left work at 15:45:58 p.m. However, the Supervisor's Calendar for the date in question shows no

**23**

record whatsoever of the plaintiff being late for work on that te. (See Ex.13).

Clearly, where there is no support in the Defendant's claim that Plaintiff did not take any type of leave to excuse the absences is again without merit. Here the fact that on the date in question Plaintiff worked a full eight hour day is certified by the very same person who proposed his suspension once again undermines the claims of the Defendant.

Defendant claims that Plaintiff left early from work on August 22, 2000. However, there is nothing in the record to support the Defendant's claim. The Bi-Weekly Time Sheet for pay period ending 8/26/00 shows that Plaintiff reported for work at 7:15 am. and left work at 3:15 p.m. (See Ex. 14). Moreover, There is no reference whatsoever in the Supervisor's Daily Calendar that would substantiate the claim that Plaintiff reported late to work on August 22, 2000. (See Ex.15. Moreover, the Security Card Records shows that Plaintiff reported to work at 7:o1:10 a.m. and left work at 13:27: 03 p.m.(See Ex. 16) Since Plaintiff was scheduled to report for duty at 7:15 in the morning, he report to work and badged in 15minutes early and left work 12 minutes late. If any thing can be said for Plaintiffs work ethic is that he reported to work early and left late. Moreover, it was Mr. Robert Bishop, the person who proposed Plaintiffs suspension, who certified that Plaintiff worked eight hours on August 22, 2001. (See Ex. 17).

Defendant claimed that on September 1, 2000, Plaintiff left work early.

**24**

However, there is no record whatsoever, to support the Defendants claim, that Plaintiff left work early. The Employee's Bi-Weekly Timesheet, for the pay period ending September 9, 2000, shows that the day in question Plaintiff worked an eight hour day and that he reported to work at 7:15 a.m. and that he left work at 3;15 p.m. I (See Ex. 18). The Supervisor's Calendar makes no reference whatsoever to Plaintiff leaving work early, while noting that certain employees did take annual leave for the day. (See Ex. 19). However, the Security Card Record for September 1, 2000, shows that the Plaintiff reported to work at 7:o4: 39 a.m. and that he left work at 13:51:26 p.m. There is a clear conflict between the Security Card Record, the Bi-Weekly Timesheet and the Supervisor's Calendar which remains unresolved. However, what is clear is that Robert Bishop did certify on official government documents that the Plaintiff worked a full eight hour day.


Finally, the Defendant claimed that the Plaintiff arrived to work late on November 30, 2000. The Security Card Record shows did not record the actual time Plaintiff reported to work on November 30, 2000. The Security Card Record for the date of November 30, 2000 noted thirteen times that Plaintiff entered and left various security areas within the building on that date.(See Ex.20 ). Moreover, the Employee's Bi-Weekly Timesheet shows that Plaintiff reported to work on time at 7:15 and left work early at 12:15 and that for the rest of the day he took three hours annual leave. Moreover, the notation on the Timesheet is confirmed by the Supervisor's Calendar where it was noted that Plaintiff had been granted 3 hours annual leave. Thus, it is

**25**

clear that there is no evidence what so every to support the Agency's claim.

Thus, it is clear that there was a causal connection between Plaintiffs EEO activity, i.e. Plaintiffs complaint concerning the agency's failure to accommodate his disability and the adverse action taken against him. Here, the evidence clearly shows that Defendant was aware of the Plaintiffs disability and did not provide any accommodation for him as it related to each of the personnel actions taken concerning either of Plaintiffs alleged absences from work and or failure to be at his duty station. (See Leffel v. Valley Financial Services. 113 F.3rd 787,) Under such circumstances it is clear that Agency retaliated against the Plaintiff.

**2.**

## **DEFENDANT DISCRIMINATED AGAINST PLAINTIFF DUE TO HIS DISABILITY**

Plaintiff submits that he was discriminated against due to his disability. In order for the Plaintiff to establish a prima facie case he must show the following: (1) that hes' disabled within the meaning of the ADA; (2) that his work performance met his employer's expectations; (3) that he was subject to an adverse action; and (4) that the circumstances surrounding the adverse action indicates that it is more likely than not that his disability was the reason for the adverse actions. Leffel v. Valley Financial Services. 113 F.3rd 787,794 (7th Cir. 1997). In the instant case Plaintiff was disabled with in the meaning of the ADA, ie he suffered from a physical disability that limited one or more of his major life activities. He was physically disabled by a lower back pain; He was physically declared officially Disable and approved on October 5, 2005 by the Office of Personnel Management. (See Ex.21) (March 13, 1996 through October 5, 2005)

**26**

disorder which resulted from an on the job injury in 1996. He suffered another reoccurring injury in 1998. As a result of the injury Plaintiff has constant lower back pain and pain in the legs. He has trouble bending and sitting for long periods of time without great difficulty. He has no control over his bowels and is unable to have sex because of the medication for his pain. (See Ex. 22). Plaintiffs performance met his employers expectations he's rated from outstanding to satisfactory. (See Ex. 23). Plaintiff was subject to adverse action, he was subject to adverse employment action. (See Ex.58. Finally it is submitted the circumstances surrounding the adverse action indicates that it is more likely than not that his disability was the reason for the adverse actions. In particular, the adverse actions taken against plaintiff turned on the questions of time and attendance. Plaintiffs doctors had requested he be allowed to leave his work station from time to time as an accommodation for his disability. However, the agency did not provide any accommodation whatsoever. Whenever, Plaintiff was away from his work station he was cited for it as AWOL, he was cited for various time and attendance issues which were not true and he was disciplined for complaining about the pain in his back and legs when he was sent on a photo shoot at the capitol. In each of the instances cited by the agency for an adverse action, some portion of the accommodation needed by Plaintiff for his disability was involved. Plaintiff was cited for not being at his work station, but management knew that in order for Plaintiff to be able to work at his job he needed to be able to walk and leave his work station. Plaintiff was cited for being late to work but management was aware that

**27**

Plaintiff was subject to severe back pain which altered his ability to perform the duties of his position and or report to work. Thus, it is clear that at the heart of the adverse actions was the attempts on the part of the agency to circumvent the doctor's request that Plaintiffs condition be accommodate his disability.

3.

### PLAINTIFF WAS SUBJECT TO A HOSTILE WORK ENVIRONMENT

Plaintiff submits that he was subject to a hostile work environment. In particular the Defendant has failed and or refused to accommodate Plaintiffs disability and is hostile to doing so even now. In the instant case Plaintiff has been continuously disciplined by the Defendant although there was no basis whatsoever for the actions taken against him. Although, Plaintiff have shown and proven to this Court that the Agency have throughout the history of this Complaint since 1996 through 2004-2005 continued to Discriminate against the Plaintiff on the Bases of his Disability by Harassment, Retaliation, Hostile work environment, and Intentional Discrimination by way of hyper supervision and its representatives; The Court can see it was clearly an ongoing Pattern and Practice of Discrimination Based on the fact that the Plaintiff was Physically Disable and the Agency never supported and obeyed the recommended restrictions that was in-placed by the Doctors. Equal Employment Opportunity by the commission v. Sheet Metal workers Intern. Ass'n, Local No. 122,  D.C. Md. 1978, 463 F Supp. 388 Civil Rights Key 377.1; Civil Rights were employers has engage in a Pattern and, or Practice of unlawful Discrimination Courts have not only the power out the duty to enjoin future discrimination.          **28**

# CERTIFICATE OF SERVICE

I, the Plaintiff Thomas D. Brown, Sr. do hereby certify that a copy of the foregoing Motion for Summary Judgment and Plaintiff's Opposition thereto, it is this _____ day of October 25, 2007: Ordered that the Defendant's Motion is hereby denied was mailed postage prepaid to Robin M Meriweather, Asst. U.S. Attorney, 555 4th Street, N.W. Washington, D.C. On this 25th day of October of 2007.

Respectfully, Submitted

Date:

Thomas Brown, Sr. 301-237-1590
3162 17th Street N.W.
Washington, D. C. 20010-274

**HENRY M. PAULSON, JR.**