UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————————
                                                    )
THOMAS D. BROWN, SR.,                               )
                                                    )   Civil Action 07-0509 (RMU)
        Plaintiff,                                  )
                                                    )
            v.                                      )
                                                    )
HENRY M. PAULSON, JR., Secretary,                   )
Department of the Treasury,                         )
                                                    )
        Defendant.                                  )
—————————————————————————)

## DEFENDANT'S MOTION FOR LEAVE TO RESPOND TO PLAINTIFF'S NOVEMBER 13, 2007 FILING

Defendant Henry M. Paulson, Jr., Secretary, Department of the Treasury, by and through the undersigned counsel, respectfully moves for leave to respond to Plaintiff's "Answer for His Memorandum in Conjunction of Defendant's Motion to Dismiss for Partial Summary Judgment" (Plaintiff's "surreply"). The undersigned emailed pro se Plaintiff to ascertain whether he objects to this motion, and Plaintiff responded that he does object.

On September 25, 2007, Defendant moved to dismiss or, in the alternative, for summary judgment on certain claims asserted by Plaintiff in his Complaint. Plaintiff filed his opposition memorandum on October 25, 2007, and Defendant filed its reply memorandum on November 2, 2007. Those briefs were the only briefs authorized by this Court's September 10, 2007 Scheduling Order. Nevertheless, on November 13, 2007, Plaintiff filed a surreply, to which Defendant now seeks leave to respond.

Attached hereto are: (1) Defendant's response to Plaintiff's November 13, 2007 Filing; and (2) a proposed order granting Defendant's Motion for Leave to Respond to Plaintiff's November 13, 2007 Filing.

Dated: December 3, 2007                          Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
Christopher B. Harwood
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov


**Of Counsel:**

NICHOLE JENKINS WASHINGTON
Office of the Chief Counsel
Department of the Treasury
Bureau Of Engraving and Printing

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served upon pro se Plaintiff

via the Court's ECF system or, should I receive notice that e-service failed, via first class mail,

postage prepaid addressed as follows:

THOMAS D. BROWN, SR.,
3162 17th Street, N.W.
Washington, DC  20010-2748


      Christopher B. Harwood
      Christopher B. Harwood

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| THOMAS D. BROWN, SR., | ) | |
| | ) | |
| | ) | Civil Action 07-0509 (RMU) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HENRY M. PAULSON, JR., Secretary, | ) | |
| Department of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S NOVEMBER 13, 2007 FILING

On September 25, 2007, Defendant moved to dismiss or, in the alternative, for summary judgment on certain claims asserted by Plaintiff in his Complaint—(1) employment discrimination claims based on events that occurred in or before 2001, (2) any claim of age discrimination, (3) claims of disability discrimination and (4) claims of race discrimination and retaliation based on Plaintiff's receipt of an "achieved standards" performance rating in November 2003. Plaintiff filed his opposition memorandum on October 25, 2007, and Defendant filed its reply memorandum on November 2, 2007. Those briefs were the only briefs authorized by this Court's September 10, 2007 Scheduling Order. Nevertheless, on November 13, 2007, Plaintiff filed a document entitled, "Plaintiff's Answer for His Memorandum in Conjunction of Defendant's Motion to Dismiss for Partial Summary Judgment" (Plaintiff's "surreply").[1] As demonstrated below, Plaintiff's surreply does nothing to undermine Defendant's compelling arguments for dismissal of the above claims.

_____

[1] Plaintiff's November 13, 2007 filing is an unauthorized surreply that technically should be stricken from the record. See Randolph v. ING Life Ins. & Annuity Co., 486 F. Supp. 1, 9 n.5 (D.D.C. Feb. 20, 2007) ("A surreply may be filed only by leave of Court, and only to address

<u>**ARGUMENT**</u>

I.     **Plaintiff's Claims Based on Events that Occurred in or Before 2001 are Barred by the Doctrines of Res Judicata (Claim Preclusion) and Collateral Estoppel (Issue Preclusion).**

Defendant has argued that Plaintiff's employment discrimination claims based on events that occurred in or before 2001 should be dismissed because they were or could have been litigated in Plaintiff's prior federal court employment discrimination action, <u>Brown v. Snow</u>, 407 F. Supp. 2d 61 (D.D.C. 2005).  In <u>Brown</u>, Plaintiff asserted claims for retaliation, hostile work environment and failure to accommodate in violation of Title VII and the Rehabilitation Act based on events that occurred predominantly in 2001.  <u>See id.</u> at 64; <u>see also</u> Def.'s Opening Mem. at 7-8.  In this action, Plaintiff has asserted claims based in part on the very same or similar events.  <u>See, e.g.</u>, Compl. at ¶¶7, 9, 10, 14, 15, 20, 24, 30, 33; <u>see also</u> Def.'s Opening Mem. at 7.  To the extent Plaintiff's claims in this action are based on "issues that were or could have been" litigated in <u>Brown</u>, they are precluded under settled law.  <u>See</u> <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action."); <u>see also</u> <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 522 U.S. 470, 476 (1998); <u>Apotex, Inc. v. Food & Drug Admin.</u>, 393 F.3d 210, 217-18 (D.C. Cir. 2004); <u>Yamaha Corp. of Amer. v. United States</u>, 961 F.2d 245, 254-56 (D.C. Cir. 2002).

In his surreply, Plaintiff argues that his claims based on events that occurred in or before 2001 are not precluded because those events (1) "were not litigated and addressed in Plaintiff's

---

new matters raised in a reply to which a party would otherwise be unable to respond." (quotation omitted)); <u>see also</u> <u>Robinson v. Detroit News, Inc.</u>, 211 F. Supp. 2d 101, 113 (D.D.C. 2002); <u>Lewis v. Rumsfeld</u>, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).  However, given that Plaintiff is appearing <u>pro se</u>, Defendant is not moving to strike Plaintiff's surreply, and instead, is merely seeking an opportunity to respond to it.

prior suit", (2) are "similar but not the same" as the issues he raised in his prior suit and (3) were "used only f[or] background information [in the] prior litigation[]."  Pl.'s Surreply at 1, 4-5. Plaintiff's arguments are unavailing.  In <u>Brown</u>, Plaintiff asserted claims based on (1) being charged with absence without leave in 2001, (2) being suspended on two separate occasions in 2001, (3) being charged with fraudulently altering his time and attendance sheets in 2001, (4) receiving a "fully satisfactory" performance evaluation in 2001, (5) being subjected to unwarranted supervision and (6) Defendant's failure to accommodate his lower back injury.  407 F. Supp. 2d at 64.  Those claims were the subject of a final judgment on the merits.  <u>See id.</u> at 65-70.  Plaintiff is therefore precluded from now litigating claims based on those or similar events.  <u>See Rivet</u>, 522 U.S. at 476; <u>Federated Dep't Stores</u>, 452 U.S. at 398; <u>Apotex</u>, 393 F.3d at 217-18; <u>Yamaha Corp.</u>, 961 F.2d at 254-56.

**II.     Plaintiff Has Failed to State a Claim for Age Discrimination.**

As set forth in Defendant's prior memoranda of law, Plaintiff has not alleged any facts that would support a claim pursuant to the Age Discrimination in Employment Act.  <u>See</u> Def.'s Opening Mem. at 11-12; Def.'s Reply Mem. at 3.  Indeed, in his surreply, Plaintiff appears to concede that he is not asserting a claim for age discrimination.  <u>See</u> Pl.'s Surreply at 2 ("the Age Discrimination claim was not an issue with the Plaintiff").

**III.    Plaintiff's Disability Discrimination Claims (<u>i.e.</u>, His Claim for Failure to Accommodate and His Claim for Hostile Work Environment Based on Defendant's Alleged Failure to Accommodate) are Deficient.**

Defendant is entitled to summary judgment on Plaintiff's disability discrimination claims because Plaintiff has failed to establish that he was disabled—<u>i.e.</u>, that he had "a physical . . . impairment that substantially limit[ed a] major life activit[y]"—in 2003 when Defendant denied

his request for a modification to his work schedule.[2]  Toyota Motor Manuf. Ky., Inc. v. Williams, 534 U.S. 184, 193 (2002); see Def.'s Opening Mem. at 12-15; Def.'s Reply Mem. at 4-6.  The medical records that Plaintiff attached to his opposition memorandum merely show that, in late 2002 and 2003, Plaintiff was treated for back pain and received a "routine eye exam"; they do not establish that Plaintiff was "substantially limited" as to a "major life activity."  See Exs. A-D.[3]  To the contrary, the medical records show that:  (1) Plaintiff was able to perform his job responsibilities despite his back pain so long as he was not required to lift heavy items and was able to change his posture at regular intervals; and (2) during a "routine eye exam," Plaintiff's "retinal blood vessels appear[ed] attenuated" and Plaintiff was told to "monitor[]" the situation "through his current physician."  See Ex. A (Plaintiff "can walk, stand, sit, bend and twist, operate a vehicle, reach above the shoulder, do some pulling and pushing and handling and grasping within the context of the limitations above."); Ex. B ("within the limitations I have requested . . . , [Plaintiff] can perform all [his job] duties"); Ex. C (Plaintiff "[m]ay resume regular work," but may "not lift more than 10-12 lbs" and must change "position hourly"); Ex. D (doctor's notes from a "routine eye exam").  Because Plaintiff has failed to demonstrate that he was disabled in 2003, his disability discrimination claims should be

---

[2] The December 5, 2003 denial of Plaintiff's request for a modified work schedule is the only pertinent event that Defendant has identified to support his disability discrimination claims. See Compl. Counts 3 & 4; Ex. 2 to Def.'s Opening Mem.  To the extent Plaintiff's disability discrimination claims are based on events that occurred in or before 2001, they are precluded. See supra Part I.

[3] Plaintiff cited to medical records in his opposition memorandum, but did not electronically file with the Court any of those documents.  Plaintiff did, however, deliver to Defendant a binder purporting to contain the documents to which he cited in his opposition memorandum.  For the Court's convenience, Defendant is attaching hereto—as Exhibits A-D—a representative sampling of the medical records from 2002 and 2003 contained in that binder.  In addition, although they are beyond the relevant time period, Defendant is attaching hereto—as Exhibits E-G—a representative sampling of Plaintiff's medical records from 2004; the records from 2004 are substantively identical to those from 2003.

dismissed.[4]  See, e.g., Baker v. Potter, 294 F. Supp. 2d 33, 45-46 (D.D.C. 2003) (an individual

cleared to return to work and perform "light duties" is not substantially limited as to a major life

activity); Heasley v. D.C. Gen. Hosp., 180 F. Supp. 2d 158, 166 (D.D.C. 2002) (being unable to

stand, walk or sit for extended periods is not a disability); Siragy v. Georgetown Univ., No. CIV.

A. 97-2557, 1999 WL 767831, at *4 (D.D.C. Aug. 20, 1999) (being subject to weight restrictions

on lifting, pulling and pushing is not a disability).

In his surreply, Plaintiff insists that a memorandum from the U.S. Office of Personnel

Management dated October 5, 2005 approving his application for disability retirement (see Ex.

H) establishes that he was disabled at the time Defendant denied his accommodation request in

2003.  It does not.  The fact that Plaintiff was approved for disability retirement in 2005 does not

establish that he was disabled within the meaning of the Rehabilitation Act two years earlier.

See Heasley, 180 F. Supp. 2d at 166 ("a disability must be demonstrated at the time plaintiff

requested and was refused a reasonable accommodation").

**IV.    Plaintiff's Claims for Race Discrimination and Retaliation Based on His Receipt of an "Achieved Standards" Performance Rating Should Be Dismissed Because the Rating was Not an Adverse Action.**

Defendant has previously demonstrated that Plaintiff's receipt of a satisfactory

performance rating in November 2003 cannot support a claim for race discrimination or

---

[4] In addition, as discussed in Defendant's prior briefing, Plaintiff's failure to accommodate claim should also be dismissed because even if Plaintiff was disabled in 2003 (and he was not), he has nevertheless failed to show that (1) Defendant had received adequate notice of his disability; (2) his request for a modification of his work schedule was a reasonable accommodation of his disability; or (3) Defendant failed to reasonably accommodate his disability.  See Def.'s Opening Mem. at 15-18; Def.'s Reply Mem. at 7.  With respect to Defendant's notice argument, Plaintiff, in his surreply, appears to argue that Defendant received adequate notice of his disability from his own self-serving statements in his EEO submissions. Pl.'s Surreply at 10.  However, as a matter of law, an employer is not on notice of a disability "prior to receiving medical documentation that substantiates" the claimed disability.  Bramwell v. Blakey, No. Civ.A. 04-927, 2006 WL 1442655, at *6 (D.D.C. May 24, 2006).

retaliation because the performance rating was not an adverse action in that it did not cause "a

significant change in [Plaintiff's] employment status," Patterson v. Johnson, No. 05-5415, 2007

WL 3145350, at *1 (D.C. Cir. Oct. 30, 2007) (defining an adverse action in the context of a

claim for race discrimination), and was unlikely to dissuade a reasonable employee from

engaging in protected activity, Burlington N. & Santa Fe Railway Co. v. White, 126 S. Ct. 2405,

2415 (2006) (defining an adverse action in the context of a retaliation claim). See Def.'s

Opening Mem. at 18-22; Def.'s Reply Mem. at 8-9. In his surreply, Plaintiff asserts—without

providing any documentary support—that the performance rating was adverse because it was

used as a partial justification for his termination in June 2004.[5]  Pl.'s Surreply at 1. In fact,

agency records demonstrate that Plaintiff was terminated not because he had received a

satisfactory performance rating, but rather, because he had (1) repeatedly refused to schedule a

medical examination and provide Defendant with medical documentation for his claimed

injuries; (2) engaged in outside employment without the agency's permission; and (3) solicited

for private commercial business on agency property. See Ex. I at 1-4. Moreover, in deciding to

terminate Plaintiff, Defendant considered Plaintiff's "acceptable performance record" as a

"mitigating factor" counseling against termination. Id. at 4.

---

[5] On June 17, 2004, Plaintiff was notified that he was to be removed from his position of
Photoengraver at the Bureau of Engraving and Printing. Plaintiff appealed that decision, and
prior to a hearing on Plaintiff's appeal, the parties agreed to a settlement pursuant to which
Plaintiff was permitted to take early retirement (effective June 18, 2004).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendant's prior memoranda supporting its Motion to Dismiss, or in the Alternative, for Summary Judgment, Defendant requests that the Court GRANT Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.

Dated: December 3, 2007                                Respectfully submitted,


                                                       _____/s/_____
                                                       JEFFREY A. TAYLOR, D.C. BAR # 498610
                                                       United States Attorney


                                                       _____/s/_____
                                                       RUDOLPH CONTRERAS, D.C. BAR #434122
                                                       Assistant United States Attorney


                                                       _____/s/_____
                                                       Christopher B. Harwood
                                                       Assistant United States Attorney
                                                       555 Fourth St., N.W.
                                                       Washington, D.C.  20530
                                                       Phone: (202) 307-0372
                                                       Fax: (202) 514-8780
                                                       Christopher.Harwood@usdoj.gov


**Of Counsel:**

NICHOLE JENKINS WASHINGTON
Office of the Chief Counsel
Department of the Treasury
Bureau Of Engraving and Printing

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served upon <u>pro se</u> Plaintiff

via the Court's ECF system or, should I receive notice that e-service failed, via first class mail,

postage prepaid addressed as follows:

THOMAS D. BROWN, SR.,
3162 17th Street, N.W.
Washington, DC  20010-2748


                 <u>     Christopher B. Harwood          </u>
                    Christopher B. Harwood



Laura Welch, MD
*Section Director*

# Washington
# Hospital Center

Occupational & Environmental
Medicine

October 1, 2002

Daisy Davis, RNC
Health Unit
Bureau of Engraving and Printing
14th and C Street S.W.
Washington, D.C. 20228

Re: Thomas Brown

Dear Ms. Davis:

I reevaluated Thomas Brown on September 26, 2002. At this point, I would like to recommend permanent job restrictions for Mr. Brown.

As you know from looking at his medical history, he has had a recurrent problem with low back injury and low back pain. He has had really maximum medical therapy with physical therapy, work conditioning and functional restoration work. He does manage his back pain with exercises and medication, but he has had persistent pain for the last several months.

He has worked on modified duty for a great deal of time over the past several years. As I understand his current job, he is in the camera department and able to do many of his usual tasks with his current lifting restrictions.

I would recommend on a permanent basis that he not lift more than 20 pounds. For the next month, I would not like him to lift more than 15 pounds. He has been on a ten pound weight restriction and we can increase it to 15 pounds. I would be able to increase it slowly, but I would not have it ever be higher than 20 pounds.

Also , he needs to be able to change his position every hour. This means that if he is assigned to standing work, he needs to walk or sit down and if he is assigned to sitting work, he needs to be able to get up, walk around and stand for a period of time. I have recommended that he generally

*MedStar Health*
100 Irving Street, NW, Suite 1114, Washington, DC 20010-2975



EXHIBIT A

Daisy Davis
Re: Thomas Brown
Page 2


walk for 10 minutes out of every hour if he is primarily doing prolonged standing or prolonged sitting work the rest of the time.

If there are specific tasks that you would like me to address within the context of his work restrictions, I would be happy to do that. He is able to work an eight-hour day. He can walk, stand, sit, bend and twist, operate a vehicle, reach above the shoulder, do some pulling and pushing and handling and grasping within the context of the limitations above. He should not spend prolonged time in an awkward posture, that is, bent over or twisted. As I said above, it is my understanding that he could perform his current job in the camera department within these restrictions.

I hope this is helpful to you. Please let me know if I can provide you with further information.

Sincerely,

Laura Welch, M.D.

\lw

cc: Thomas Brown

EXHIBIT A



Laura Welch, MD
*Section Director*

# Washington
# Hospital Center

Occupational & Environmental
Medicine

December 31, 2002

Dr. Cheryl Opalak, Medical Director
Health Unit
Bureau of Engraving and Printing
14th & C Streets, SW
Washington, DC 20228

Re:  Thomas Brown

Dear Dr. Opalak,

Thomas Brown gave me a copy of a memo from Judith Diaz Myers regarding permanent
accommodation of his back condition.

I think you have all of the medical information requested in that memo; I'm attaching my
most recent letter.

I reviewed the job description of photoengravers (WE-4425). Would you please explain
to me which of his duties he cannot perform within the limitations I have requested. As
far as I can tell, he can perform all the duties listed. The job description does not provide
details on weights lifted or a definition of "prolonged" standing and walking.

My medical restrictions are clear. I believe it is now BEP's responsibility to determine if
these restrictions can be accommodated. I would point out Mr. Brown has been doing
this job with these specific restrictions for a long time, so to my knowledge these
restrictions can be accommodated within his job.

Sincerely,

Laura Welch, M.D.

cc:    Thomas Brown
        J. Myers

*MedStar Health*
100 Irving Street, NW, Suite EB-1114, Washington, DC 20010-2975
*phone:* 202 877 5466  •  *fax:* 202 877 4136

EXHIBIT B

Tracking # KP 803211



# KAISER PERMANENTE.



BROWN, THOMAS D

L

FILE COPY

## OPL REFERRAL FORM /
## VERIFICATION OF TREATMENT

Patient

**IS THERE EVIDENCE THAT THIS INJURY/ILLNESS IS WORK-RELATED,
OR THE RESULT OF AN ACCIDENT?**                            ☒ Yes  ☐ No    Injury date 2/14/

The above named patient has: (circle all appropriate)

1. (received medical treatment)                          treatment date(s) 4/2/03
2. received medical advice                               advice date(s) _____

Physical Findings/Diagnosis _____ MD visit _____

Disability/Illness _____ Disability/Illness date from _____ to _____

he patient:

☒ Has been ill and unable to work from 4/2/03 to 4/6/03

☒ May resume regular work on   not to lift more than 10-12lb  (4/7/03)

☒ May resume restricted work as follows  April 7, 03 - return to work
  a position hourly 2° chem lower back p

   from (date) _____ until approximately _____

☒ Will need a follow-up appointment on or about  3-4 wk

☐ Is able to participate in competitive sports.

☐ May return to school on _____

☐ Should be excused from Physical Education until _____

☐ Is on _____ medication and should receive _____ dose(s).

   At _____ and _____ for _____ days. Possible reaction _____

   Special instructions _____

☐ Advice protocol _____

| Bradley | 7774 | 4/2/03 |
|---|---|---|
| Signature and printed name | Provider # | Date |

I HEREBY CERTIFY THAT I HAVE REVIEWED, UNDERSTAND AND AGREE TO THE INFORMATION ABOVE,
I AUTHORIZE THE RELEASE OF THIS INFORMATION TO MY EMPLOYER OR ANY OTHER PERSON OR ENTITY T
MAY BE RESPONSIBLE FOR PAYMENT OF SERVICES RENDERED.

| _____ | 4-2-2003 |
|---|---|
| Signature (patient) | Date |

EXHIBIT C

Telephone: (202) 289-4111

License #7621000768

**ANN LOFTUS POLONCAK, O.D.**
OPTICAL IMAGES
Union Station Mezzanine

50 Massachusetts Ave., NE

Washington, DC 20002

Name _Thomas Brown_    Date _1-8-03_

Address _____

Rx  _To whom it may concern:_

_Mr. Brown's retinal blood vessels_

_appear attenuated during 4 day routine_

_eye exam. I have asked him_

_to continue monitoring his health things_

☐ Label

Refill: 0 · 1 · 2 · 3 · 4 · PRN

---

Telephone: (202) 289-4111

License #7621000768

**ANN LOFTUS POLONCAK, O.D.**
OPTICAL IMAGES
Union Station Mezzanine

50 Massachusetts Ave., NE

Washington, DC 20002

Name _Brown Thomas W._    Date _1-8-03_

Address _____

Rx

OD  +150
OS  +100  DS

ADD +225

☐ Label

Refill: 0 · 1 · 2 · 3 · 4 · PRN

_Copy if Rx_    O.D.

EXHIBIT D

# DRS. COLLINS, JOHNSON, TOZZI & STARR, P.C.

PHYSICIANS OFFICE BUILDING
106 IRVING STREET, N.W. #215
WASHINGTON, D.C. 20010
(202) 291-9266
FAX (202) 291-7659

6196 OXON HILL ROAD #450
OXON HILL, MARYLAND 20745
(202) 291-3918

ROBERT E. COLLINS, M.D.    DAVID C. JOHNSON, M.D.
JAMES E. TOZZI, M.D.    JOHN K. STARR, M.D.
WIEMI A. DOUOGUIH, M.D.

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

FOXHALL SQUARE BUILDING
3301 NEW MEXICO AVE., N.W. #318
WASHINGTON, D.C. 20016
(202) 966-2256
FAX (202) 966-4369

THOMAS BROWN
CG 3319S
SSN ▓▓▓▓▓▓
CC: US DOL 25-2026897
DOI 2-14-03

April 26, 2004

CHIEF COMPLAINT: Low back, right buttock, and leg pain.

PRESENT ILLNESS: Mr. Brown is a 51-year-old gentleman whom I had last seen in November 2001. At that time we were dealing basically with degenerative changes in the L4-5 and L5-S1 disk levels. He had been assisted greatly by an epidural steroid series at that time and returned to full-time employment at the Bureau of Engraving and Printing, and it is for recurrence of the same low back, right buttock and radiating leg pain for which he returns now. He states that he did have an injury back in February 2003. It appears that he was out of work until approximately 03/14/2003. He has been seen by Dr. Laura Welch, who following this episode had written and recommended some permanent job restrictions for Mr. Brown to begin 04/18/2003. These included no pulling or pushing more than 10-12 pounds, no lifting or carrying more than 10-12 pounds. It is Mr. Brown's report that these restrictions were not accommodated by the Bureau. He has continued to have difficulty, and states that he now has been on a no-work status since I believe sometime in January 2004.

PAST HISTORY: Mr. Brown is a photo engraver at Engraving and Printing. He is single and lives in Northwest Washington. His past medical history is significant for hypertension and adult-onset diabetes for which he takes Glucophage and Micronase. He has had surgery on the right shoulder for recurrent dislocation.

PHYSICAL EXAMINATION: He is 5 feet 10 inches and 215 pounds. Blood pressure is 138/80, temperature is 98.5, pulse is 58. He is normocephalic with a large incision on the face and head. Cranial nerves II-XII are grossly intact. There is neither supraclavicular nor axillary adenopathy. There is no pain to palpation or any visible malalignment of any of 4 extremities. He is able to walk on toes and heels bilaterally. Deep tendon reflexes are 2/3 at bilateral knees and left ankle. The right ankle jerk is relatively absent. There is no abnormality of lymphatics or vascular system in the lower extremities.

X-RAYS: The patient has also had ordered recently a new MRI scan which I have available for review, and this does demonstrate what I believe by comparison is some progressive degenerative change in the L4-5 disk. The L5-S1 degeneration without neural compression appears to be fairly stable.

PLAN: The patient has been enrolled in a physical therapy program which is ongoing. My initial recommendation to Mr. Brown is that he complete this course of therapy. He may be a candidate for renewed epidural injectional treatment, but we will make any subsequent recommendations upon completion of the therapy and reevaluation here in the office. I believe he should be kept on partial incapacitated basis from 04/26/2004 through 05/28/2004. He may resume light duty

EXHIBIT E

BROWN, THOMAS
April 26, 2004
Page 2

on 04/27/2004.  My restrictions would be no bending or twisting and no lifting of greater than 10 pounds.  If these cannot be accommodated, then Mr. Brown will be on a no-work status until seen again in the office.

4-28-04   cc: US DOL

ELECTRONICALLY SIGNED BY JOHN K. STARR, M.D. ON 04/28/2004 11:31
JOHN K. STARR, M.D.

JKS/02004/mdi/99975/88004/50907/063567/051452/DD: 04/27/2004/DT: 04/27/2004 15:26

cc:  Dinesh Joshi, M.D., 2100 W. Pennsylvania Avenue, NW, Washington, DC 20037

EXHIBIT E

DRS. COLLINS, JOHNSON, TOZZI & STARR, P.C.
WIEMI A. DOUOGUIH

PHYSICIANS OFFICE BUILDING
106 IRVING STREET, N.W. #215
WASHINGTON, D.C. 20010

**John K. Starr, M.D.**
Orthopaedic and Spinal Surgery
Board Certified

M _Thomas Brown_

HAS AN APPOINTMENT

ON _4/20/04_ AT _3:30 pm_

PLEASE NOTIFY THE OFFICE 24 HOURS IN ADVANCE.
IF UNABLE TO KEEP THIS APPOINTMENT
TELEPHONE (202) 291-9266

_Appt w/Dr John Starr_

Physicians Office Building
106 Irving Street, N.W. #215
Washington, D.C. 20010
Tel (202) 291-9266
Fax (202) 291-7689

Foxhall Square Building
3301 New Mexico Ave., N.W. #318
Washington, D.C. 20016
Tel (202) 966-2256
Fax (202) 966-4369

---

Q-8

DRS. COLLINS, JOHNSON, TOZZI & STARR, P.C.
WIEMI A. DOUOGUIH, M.D.

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

Physicians Office Building
106 Irving Street, N.W. #215
Washington, D.C. 20010
(202) 291-9266

Foxhall Square Building
3301 New Mexico Ave., N.W.
Washington, D.C. 20016
(202) 966-2256

6196 Oxon Hill Road #445
Oxon Hill, Maryland 20745
(202) 291-3018

This is to certify that: _T. Brown_

To whom it may concern:

has been under my professional care, and was:
☐ Totally incapacitated
☑ Partially incapacitated

from _4-20-04_ to _5-28-04_

He/She may return to full/light duty on _4-27-04_

Limitations/remarks: _no bending or lifting > 10 lbs_

Signed _____

---

Q-23

DRS. COLLINS, JOHNSON, TOZZI & STARR, P.C.
WIEMI A. DOUOGUIH, M.D.
106 Irving St., N.W. #215
Washington, D.C. 20010

EXCUSE FORM

PLEASE EXCUSE: _Mr. Thomas Brown_

FROM: ☐ SCHOOL ☑ WORK

FOR AN APPOINTMENT AT THIS OFFICE ON:

MON. TUES. WED. THURS. (FRI.)

DATE _4/20/04_ AT _1:45_

THANK YOU!

Signed _____ Date _4/20/04_

Pt's appt was cancelled by Dr office. Pt was unaware. He has been...

EXHIBIT F

# FILE COPY



Telephone: (202) 289-4111 License #7621000768

**ANN LOFTUS POLONCAK O.D.**
*OPTICAL IMAGES*
Union Station Mezzanine

50 Massachusetts Ave., NE Washington, DC 20002

Name _Thomas Brown_ Date _3-29-04_

Address

Rx: According to Mr Brown's general practitioner his blood sugar is elevated to 307. Increased blood sugar can cause the lens in the eye to change this can impair the vision for a mo after blood sugar stabilizes mostly. Please feel free to call with questions.



RECEIVED
3/6/04

EXHIBIT G



United States
# Office of
# Personnel Management

Washington, DC  20415-000i

October 5, 2005

THOMAS D. BROWN
3162 17TH STREET NW
WASHINGTON, DC 20010

CSA: 4 218 164
SSN: ███████

Dear MR. BROWN:

Your application for disability retirement has been approved.

According to information we have received from your agency, you **have been separated from Government service.** Before we can begin interim annuity payments, we must obtain the date you were last paid by your former employing agency. Payment of annuity cannot start until after your last day of pay. We are requesting this date from your former agency and will begin interim annuity payments within 14 to 20 calendar days **after we know your last day of pay.** You will receive a notification when we have received the last day of pay and interim annuity payments begin. **NOTE: If you are in receipt of benefits from the Office of Workers' Compensation Programs, you may not receive any civil service annuity benefits during the same period that you are in receipt of this compensation. If you have received a refund of retirement contributions, you will receive further information concerning this from the Retirement Claims Division.**

**If you were a CSRS–Offset employee** (*If you are not sure whether you are a CSRS-Offset employee, check with your agency*), we cannot start your annuity payments until we receive confirmation that you have applied for Social Security disability benefits. If you have not already done so, you must now apply for them. Please send us a copy of the receipt (or notice of allowance or disallowance) which you receive from the Social Security Administration after you file the application.

If the Social Security Administration awards you monthly benefits, you must also notify OPM of the amount of the monthly Social Security benefit and effective date of payment immediately upon becoming eligible (a photocopy of the award notice or a statement showing the monthly Social Security benefit and effective date when they determined

EXHIBIT H

your eligibility began would be helpful). OPM will be conducting periodic checks against Social Security records to discover unreported awards. Notification of Social Security benefits, and the confirmation that you have applied to Social Security should be sent to:

> Office of Personnel Management
> Federal Employees Retirement System
> Boyers, PA  16017

Sometimes medical conditions that are disabling for a period of time improve or are resolved. If your medical condition improves to the point you, and your physician, feel your disabling condition is resolved, you may ask us to review current medical evidence to determine if you have recovered. If you are found recovered from your disabling medical condition on your request, annuity payments will cease the month following the one in which the determination is effective.

In addition, if you are under age 60 we may ask you from time to time to submit detailed medical evidence to show your condition continues to be disabling. If the medical evidence shows your condition to have improved to the point you can again perform the duties of your previous position, we will find that you are medically recovered. If you are found medically recovered from your disabling medical condition, annuity payments will cease one year from the date of the medical examination on which the action is based.

In either case, you need to understand that if you are found recovered, your former employing agency is **not** obligated to rehire you into your former position, or any position. If your annuity payments are terminated because you are found medically recovered, you will be eligible for a deferred annuity at age 62 or at an earlier date if you meet service criteria for a discontinued service retirement. We will inform you when you are eligible if we find you recovered.

Please be sure to notify us if you are reemployed with the Federal Government, your marital status changes, or there is a change in your address (either the address where we send your payment, or the address where you wish us to send correspondence, notices, etc). You can report these events and get answers to general questions from our Retirement Information Office on 1(888) 767-6738, or you may write to the Office of Personnel Management, Retirement Operations Center, Boyers, PA 16017. Be sure to include your Civil Service Annuity (CSA) claim number on any correspondence.

Please keep this letter with your other retirement papers for future reference.

You may become eligible for Medicare based on your disability. To qualify, you must be disabled within the meaning of the Social Security Act for 29 months and you must have sufficient earnings in Medicare covered employment, including Federal employment. If you believe you may qualify for Medicare, you should contact your local Social Security

office promptly to file an application.  A delay in filing could result in a delay in the date your Medicare entitlement may begin.

We understand that retiring on disability may be difficult and unsettling, and hope that your retirement proves to be a positive experience for you.

Sincerely,

Cindy M. Ingram-Allen
Legal Administrative Specialist
Disability Reconsideration
  And Appeals Division

EXHIBIT H

CC:  DEPARTMENT OF THE TREASURY
     BUREAU OF ENGRAVING AND PRINTING
     WASHINGTON, DC 20228



# DEPARTMENT OF THE TREASURY
## BUREAU OF ENGRAVING AND PRINTING
### WASHINGTON, D.C. 20228

MEMORANDUM FOR THOMAS D. BROWN Sr.
                        PHOTOENGRAVER
                        OFFICE OF ENGRAVING

**JUN 1 7 2004**

FROM:           Kit Regone,
                 Associate Director (Operations)

SUBJECT:       Notice of Decision

1.  This refers to the memorandum to you dated May 5, 2004, proposing to remove you from your position of Photoengraver, WE 4425, Office of Engraving, Bureau of Engraving and Printing (BEP), based upon the Charges outlined in that notice.  You were given the opportunity to respond orally, in writing, or both.  You chose to submit a written response, which was dated on May 26, 2004.

As a preliminary matter, I note for the record that you requested and were granted an extension of time for your response to the proposal.

Based on the entire record, and after having given full and careful consideration to all factors involved in this case, I have decided that the Charges of Insubordination, Engaging in Outside Employment or Business Without Prior Permission, and Soliciting or Advertising for Commercial Business on Bureau Property are fully supported by the evidence and warrant your removal.

In reaching this conclusion, I note all of the sustained Charges are fully supported by the evidence.  Thus, in regards to Charge One, Insubordination, the evidence establishes that

- on or about March 4, 2004, you submitted limited medical documentation indicating that, for an indeterminate length of time, you were unable to perform any of the duties of your position due to problems with your vision;
- on March 30, 2004, you were ordered to schedule a medical examination, and obtain specified medical information regarding both your back and your vision, to allow the Bureau to determine whether you were medically able to perform the duties of your position;
- you failed to fully comply with the requirements of the March 30, 2004 Order, without explanation;
- on April 22, 2004, you were ordered (both orally and in writing) by Judith Diaz-Myers, Chief, Office of Engraving, to schedule and undergo a medical

EXHIBIT I

examination with Dr. Robert Collins, MD, in order to determine whether you were medically able to perform the duties of your position;

- Ms. Diaz-Myers explained to you that the reason for an examination with Dr. Collins was due to problems with your vision, for which problems had not been addressed by medical documentation that you had submitted;
- you repeatedly refused to comply with the April 22, 2004 order, and that you emphatically told Ms. Diaz-Myers that you were refusing to comply, despite her repeated efforts to persuade you to comply with her directions;
- you failed to provide Ms. Diaz-Myers with any explanation of your refusal to comply with the Order; and
- you did not comply with the April 22, 2004 order.

Moreover, I note that, in your written reply, you either did not deny or did not even address the allegations of insubordination set forth in the first Charge. For example, you did not deny that on April 22, 2004, you were ordered by Office Chief Judith Diaz-Myers (both orally and in writing) to schedule an appointment for a medical exam with Dr. Robert Collins, an independent medical examiner. You did not deny being told that the purpose of this examination was to determine whether, "due to problems with your vision" you were medically unable to perform the duties of your position. You did not deny that you repeatedly and intentionally refused to comply with this order, and that you have to date not complied with the order. You also do not allege that you had any misunderstanding regarding what you were required to do to comply with the order.

Your sole defense is that, in your opinion, the Bureau did not need the medical information which would result from an examination by Dr. Collins. You base this claim on assertions that (a) eighteen months ago, in 2002 you had provided the Bureau with medical information regarding your back; and (b) as a result of the March 30, 2004 Order, you had scheduled an appointment to see Dr. John Starr, an orthopedic surgeon, in order to obtain additional medical information regarding your back.

I find that your assertions, even if they were completely accurate, do not justify your refusal to comply with the direct order to schedule an examination with Dr. Collins. In this regard, prior to the April 22nd Order, you were already on notice of the requirement to provide the Bureau with medical information regarding your vision. On or about March 4, 2004, you had provided the Bureau Health Unit with limited medical documentation indicating that you were currently unable to perform any of your duties as a Photoengraver, due to problems with both your back and your eyesight. Consequently, by letter of March 30, 2004, you were ordered to schedule a medical examination to determine whether you are medically able to perform the duties of your position. The letter provided a detailed description of the information to be provided as a result of that examination, including detailed information regarding your vision, since your alleged visual impairment was the primary basis for your inability to perform the duties of your position.

Although you did not comply with the requirements of that order, you advised the Bureau on April 8, 2004 that you had scheduled an appointment to see Dr. Starr in

EXHIBIT I

order to obtain additional medical information regarding your back. You were repeatedly told at that time, however, that Dr. Starr was an orthopedic surgeon who could not provide the requested medical information regarding your vision, and that an examination by Dr. Starr would neither fully comply with the March 30, 2004 Order nor provide the Bureau with the necessary medical information. Despite these warnings, you took no further action to comply with the March 30th Order. Under the circumstances, even if scheduling the appointment with Dr. Starr partially complied with the March 30th Order, you were fully aware that it did not eliminate the Bureau's need to obtain additional medical information regarding your vision.

Moreover, you were advised in writing in the Order of April 22, 2004, that the major purpose of the examination by Dr. Collins was to determine whether, "due to problems with your vision" you were medically unable to perform the duties of your position. You were also repeatedly told during the April 22nd meeting that the examination by Dr. Collins was required because, as an independent medical examiner, he could also examine and provide the Bureau with medical information regarding your vision. Consequently, even if the medical information you submitted had been sufficient to meet the Bureau's needs regarding any physical limitation caused by your back problems, you were aware that it did not address the primary reason for which you were ordered to schedule an examination with Dr. Collins. Under the circumstances, I note that you were fully aware of the reasons for which the Order was given, but still choose to consciously defy the Order. Such blatant defiance of supervisory authority cannot be tolerated. Accordingly, Charge One is fully supported by the evidence and is sustained.

2. Similarly, in regards to Charges 2 and 3, <u>Engaging in Outside Employment or Business Without Prior Permission,</u> and <u>Soliciting or Advertising for Commercial Business on Bureau Property</u> respectively, the evidence establishes that on or about January 20, 2004, you provided numerous Bureau employees with your personal business card, which states "Photography by Thomas "Tommy" Brown Sr.", and which provides your official Bureau telephone number as the number on which you should be called for this business.

In your response to the charges, you did not specifically deny that you were engaged in an outside business. Instead, you claimed only that the distribution of the personal business card, advertising your personal business in the Bureau, did not prove that you were engaged in an outside business. However, you did not provide any alternative explanation for why, if you did not have such a business, you would have prepared and printed a business card stating that you had an outside business. Nor did you provide any alternative explanation for why you distributed the business card to Bureau employees. You also did not dispute that you failed to obtain permission to engage in this outside business, as required by both Bureau policy and Department of the Treasury regulations. Finally, you did not deny that you were aware of the requirement to obtain permission prior to engaging in an outside business.

Based on the totality of the evidence, I find that you were engaged in an outside business, that by distributing your business card throughout the Bureau you were

EXHIBIT I

soliciting or advertising for your outside business, and you did so without having received prior permission to engage in an outside business, as required by both Bureau and Departmental Policy.   Thus I find that this business card, and in particular your distribution of the card in soliciting business on Bureau premises, indicates that you were engaged in the outside business of Photography, doing business under the name "Photography by Thomas "Tommy" Brown Sr."   Since you failed to obtain permission to engage in an outside business, as required by Bureau and Departmental Policy, I find that Charge 2 is fully supported by the evidence and is sustained.  I also find that by distributing the card to Bureau employees, including supervisors and the Office of Legal Counsel, you were soliciting or advertising for commercial business on Bureau property as specified in Charge 3.  Accordingly, Charge Three is also fully supported by the evidence and is sustained.


3. Finally, I have determined that removal is the only appropriate penalty for such misconduct, and that no lesser penalty would be appropriate.  In making that determination, I have considered the applicable Douglas Factors, including your many years of service to the Bureau, and your acceptable performance record.  I have also considered the guidance provided by the Bureau Table of penalties, the clarity with which you were on notice of the rules that you violated in committing the charged offense, and your prior disciplinary history.  I note that you were previously suspended on three different occasions in 2001 and 2002, and that one of these suspensions involved the related charge of failure to follow supervisory instructions.

I find that any mitigating factors arising from your service and past history are far outweighed by the nature and seriousness of your misconduct, the impact of the misconduct on my ability to trust you to perform your duties, and other aggravating factors.

First, I find that the act of insubordination set forth in the first charge constitutes unacceptable conduct that cannot be tolerated, and significantly impacts the efficiency of the service.  Your act of insubordination was committed intentionally, in direct defiance of supervisory authority. Extensive efforts were made to encourage you to comply with direct orders and Bureau policy. Despite these efforts, you willfully ignored a direct order and showed contempt for the authority of your supervisor and the agency.

Moreover, compliance with supervisory orders is essential to maintaining the efficiency of Bureau operations.   A deliberate refusal to comply with a supervisory instruction seriously undermines the capacity of Bureau management to maintain employee efficiency and discipline.  Insubordination is one of the most serious offenses a federal employee can commit, and the Bureau cannot and will not tolerate such misconduct. Even if this were the only charge against you, I would uphold your removal.

I also considered the second and third charges against you to be extremely serious. Because of the nature of our business, it is extremely important for Bureau employees to comply with the applicable standards of ethical conduct, and the Bureau and

EXHIBIT I

Treasury polices enforcing those standards. Moreover, all employees are expected to be aware of the standards of ethical conduct applicable to their position. In this case, the evidence in this case establishes that you were advised several times of the requirement to obtain prior approval before engaging in outside business or employment, as required by Bureau policy and the Standards of Ethical Conduct for Employees of the Department of the Treasury. Your failure to comply with this requirement is an additional reason why I can no longer trust you to perform the duties of your position.

I have also considered that you were clearly on notice that you were engaging in insubordination and failing to comply with applicable Bureau and Departmental polices. Even before receiving the April 22 order, you had repeatedly been warned about your insubordinate conduct and your failure and refusal to fully comply with supervisory orders to obtain a medical examination, including an examination of your vision. More importantly, on the date you received the April 22nd Order, you were repeatedly warned that your refusal to comply constituted insubordination for which you would be disciplined. Despite these warnings, you still chose to engage in insubordination. In addition, you were issued memoranda regarding outside employment and the requirements associated with that employment and still refused or failed to comply with the applicable Bureau and Departmental polices.

Finally, I find that, given the serious nature of your misconduct, you have not demonstrated a potential for rehabilitation, and that no lesser penalty could provide an effective alternative sanction to deter such conduct in the future. I can no longer extend to you the high degree of trust required for your position. Your continued insubordination and failure to comply with direct orders after verbal and written warnings were provided serve as evidence that removal is the appropriate recourse. Accordingly, you will be removed from the Bureau of Engraving Printing, effective June 18, 2004. This action is taken in order to promote the efficiency of the service.

4. You are required to turn in your identification badge, keys and any other assigned property to your supervisor. Failure to do so will result in a delay in the settlement of any funds due to you.

5. You may appeal this action within no later than thirty (30) calendar days after the effective date of this action to the Merit Systems Protection Board (MSPB), in accordance with regulations under the Civil Service Reform Act of 1978. An appeal to the MSPB should be sent to the Merit Systems Protection Board, Washington, D.C. Regional Office, 1800 Diagonal Road, Suite 205, Alexandria, Virginia, 22314-2840.

5. The specific procedures for you to follow in an appeal to the MSPB are attached. 5 CFR Part 1201.24 of the regulations identifies information that must be included in your written appeal to the Board. You may use the appeal form included as an appendix to the regulations, although it is not required that you file your appeal using the form. However, since completion of the form would constitute compliance with the requirements of 5 CFR 1201.24, you are encouraged to use the form. Guidance on the

EXHIBIT I

**Notice of Decision for Thomas Brown Sr.**                    **Page 6 of 6**

regulations for processing your appeal may be obtained by contacting Phillip Boyer of the Labor-Management Relations Division on (202) 874-2528 in Room 648-A.

6. If you believe this action was taken against you because of your race, color, sex, national origin, physical handicap, religion, or age (if you are 40 years of age or over), you may select one of the following options:

a. You may raise the allegation of unlawful discrimination in connection with, or as the sole reason for an appeal to the MSPB. The MSPB will consider the allegation of discrimination as a part of the appeal.

b. In lieu of an appeal to the MSPB, you may initiate a discrimination complaint under the discrimination procedures of the Department of the Treasury. To initiate this option, you may contact the Bureau's EEO Counselor on (202) 874-2461, and file a discrimination complaint with the Bureau's Equal Employment Opportunity Office within forty-five (45) calendar days of the effective date of this action.

7. Enclosed for your information and guidance is a Standard Form 8, "Notice to Federal Employees About Unemployment Insurance." This form is given to you in accordance with Unemployment Compensation for Federal Employees, Bulletin No. 13, issued by the Department of Labor.

Attachment

EXHIBIT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
THOMAS D. BROWN, SR.,                         )
                                              )   Civil Action 07-0509 (RMU)
                Plaintiff,                    )
                                              )
                v.                            )
                                              )
HENRY M. PAULSON, JR., Secretary,             )
Department of the Treasury,                   )
                                              )
                Defendant.                    )
_____)

### [PROPOSED] ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO RESPOND TO PLAINTIFF'S NOVEMBER 13, 2007 FILING

Upon consideration of Defendant's Motion for Leave to Respond to Plaintiff's November 13, 2007 Filing ("Motion for Leave to Respond"), it is, this _____ day of _____, 200__,

ORDERED that Defendant's Motion for Leave to Respond be and hereby is GRANTED.

SO ORDERED.


_____
United States District Judge