UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| Thomas D. Brown, Sr., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0509 (RMU) |
| | : | | |
| v. | : | Document No.: | 16 |
| | : | | |
| | : | | |
| Henry M. Paulson, Jr., | : | | |
| | : | | |
| Defendant. | : | | |

MEMORANDUM OPINION

GRANTING DEFENDANT'S MOTION FOR PARTIAL DISPOSITIVE RELIEF

I.  INTRODUCTION

In this action brought *pro se* under Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§§ 2000e *et seq*.; the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*.; and the Family and Medical
Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*., plaintiff sues his former employer, the
Department of Treasury's Bureau of Engraving and Printing ("BEP"), for retaliation and
disability discrimination.[1]  Compl. at 1.  He also sets forth claims of race discrimination, *id*. at 8-
9, and hostile work environment, *id*. at 10.  Defendant moves for partial dismissal of the
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and for partial summary
judgment pursuant to Rule 56.  Upon consideration of the parties' submissions and the record,
the court grants defendant's motion for partial relief.

---

[1]     Although plaintiff invokes the Americans with Disabilities Act ("ADA"), 42 U.S.C.§§ 12101 *et
seq*., that Act does not apply to federal defendants.  *See Jordan v. Evans*, 404 F. Supp. 2d 28, 30
(D.D.C. 2005).  The court therefore has construed this claim as brought under the ADA's federal
analogue, the Rehabilitation Act.  In addition, plaintiff has not pleaded any facts to state a claim
under the FMLA; thus, this claim is dismissed.

## II.  BACKGROUND

Plaintiff worked at BEP from 1971 until 2004.  Def.'s Statement of Material Facts as to Which There is No Genuine Issue ¶ 1.  Plaintiff alleges that he began to experience lower back pain from a job-related injury in 1996 and that the "injury was aggravated by subsequent on-the-job injuries in 1996 and 2001."  Compl. ¶ 6.  "On or about February 28 or March 1, 2001," plaintiff reported to work late because of his back pain.  *Id*.  Although allegedly plaintiff was on flex-time, he was reprimanded on March 20, 2001 for being two hours late.  *Id*. ¶ 9.  On April 18, 2001, plaintiff received "a proposed notice that he was to be considered AWOL and docked for the time he was not at work."  *Id*.  Plaintiff "thereafter" filed an informal EEO complaint challenging the proposed notice.  The April 18 notice was rescinded by Memorandum of May 1, 2001.  *Id*.  After meeting with Second Line Supervisor Robert Bishop, during which plaintiff stated that he would not sign the Memorandum, plaintiff "believ[ed] that the matter had been resolved."  *Id*.  But he was charged with being absent without leave ("AWOL")  "allegedly because he would not sign the May 1, 2001 Memorandum."  *Id*.

On July 13, 2001, plaintiff was given a notice of proposed suspension for 14 days and "on September 6, 2001, [plaintiff] was again suspended for a period of three days."[2]  *Id*. ¶ 14. Meanwhile, "[o]n or about August 6, 2001," plaintiff's supervisors accused him of committing fraud on his time and attendance sheets.  *Id*. ¶ 7.  On December 10, 2001, plaintiff "received an Employee Performance Appraisal of Fully Satisfactory."  *Id*. ¶ 15.  By then, he had filed three

---

[2]    Although it is not clear from the complaint allegations, it appears that in May 2001, plaintiff was suspended for three days for the events prompting the April 18, 2001 Memorandum. *See* Compl. ¶¶ 10, 13, 24.

EEO complaints. *Id*. ¶ 16. Plaintiff filed another EEO complaint on January 28, 2002, and apparently one other at an unspecified date after January 13, 2004. *Id.* ¶ 21.

Plaintiff alleges that he was charged as AWOL on November 20, 2003, December 5, 2003, December 15, 2003 and January 13, 2004, *id*. ¶ 24, and was denied a training request on February 17, 2004. Plaintiff also alleges that on January 13, 2004, he "was insulted and threaten[ed] by a co-worker," *id*. ¶ 20, and that on March 3, 2004, he was "harassed and retaliated against by supervisor (Mr. Patrick Reidy) for an assignment (SD)." *Id*. ¶ 6. Plaintiff filed this civil action on March 19, 2007.

### III.  ANALYSIS

#### A.  Legal Standards

A court may dismiss a complaint on the ground that it fails to state a claim upon which relief can be granted if, assuming the alleged facts to be true and drawing all inferences in the plaintiff's favor, it appears that the plaintiff can prove no facts "consistent with the allegations in the complaint" to support the alleged violation. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1969 (2007); accord *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive

law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

"genuine issue" is one whose resolution could establish an element of a claim or defense and,

therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

   In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or

conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*,

9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that

would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is

merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. The Court Grants the Defendant's Motion to Dismiss in Part

   Defendant argues that any of plaintiff's claims based on events that took place in 2001 or

before are barred because they were adjudicated in a prior action in this court, namely, *Brown v.*

*Snow*, 407 F. Supp. 2d 61 (D.D.C. 2005) (Leon, J.). "The doctrine of *res judicata* prevents

repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l*

*Pension Fund. v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). *Res judicata* has

two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral

estoppel) – that apply in different circumstances and with different consequences to the litigants.

*NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 143 (D.C. Cir. 2001);

*Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983).

Under claim preclusion, "a final judgment on the merits of an action precludes the parties

or their privies from relitigating issues that were or could have been raised in that action." *Drake

v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (*quoting Allen v. McCurry*, 449 U.S.

90, 94 (1980)); *see Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984) (holding that final

judgment on the merits in one action "bars any further claim based on the same 'nucleus of

facts,' for 'it is the facts surrounding the transaction or occurrence which operate to constitute the

cause of action, not the legal theory upon which a litigant relies.'") (*quoting Expert Elec., Inc. v.

Levine*, 554 F.2d 1227, 1234 (D.C. Cir. 1977)).

Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or

law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a

different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United

States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (*quoting Allen*, 449 U.S. at 94). In short, "claim

preclusion forecloses all that which might have been litigated previously," while issue preclusion

"prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l

Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309. In this way, *res judicata* helps

"conserve judicial resources, avoid inconsistent results, engender respect for judgments of

predictable and certain effect, and [] prevent serial forum-shopping and piecemail litigation."

*Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981)*; see also Allen*, 449 U.S. at 94.

In the previous action filed by counsel on May 22, 2003 (*Brown v. Snow*, Civ. Action No. 03-1114), plaintiff sued under Title VII and the Rehabilitation Act "on theories of retaliation, hostile work environment, and failure to accommodate." *Brown*, 407 F. Supp.2d at 63.[3]  The claims were based on the AWOL charge on March 20, 2001, the three-day suspensions on May 18, 2001 and September 6, 2001, the charge of fraudulently altering time and attendance sheets in August 2001, the "fully satisfactory" performance evaluation on December 10, 2001, plaintiff's subjection to unwarranted supervision, and defendant's failure to accommodate plaintiff for his lower back injury. *Id*. at 64.  Plaintiff "abandoned or withdr[ew]" his claim of race discrimination "in his opposition to defendant's present motion." *Id*., n.1.  The court granted summary judgment for defendant on all claims. *Id*. at 70.

Because plaintiff may not litigate the foregoing claims anew, defendant's motion to dismiss any claims stemming from the 2001 events is granted.  Moreover, plaintiff may not litigate any claims based on the same "nucleus of facts" prior to May 2003 because there is no indication in the record that he was prevented from raising such claims in the prior action. *See Velikonja v. Ashcroft*, 355 F. Supp.2d 197, 201-2 (D.D.C. 2005) (claim not precluded if supporting facts were not yet in existence, if joinder with the original claim would have been "utterly impracticable," or if the claim could not have been anticipated) (citing cases).  From what the court makes of the complaint, then, the surviving claims are for: (1) retaliation based on the AWOL charges in the latter months of 2003, Compl. ¶ 24, and the denial of plaintiff's training request in February 2004, *id*. ¶ 25; (2) disability discrimination based on defendant's

---

3    In ruling on a Rule 12(b)(6) motion, the Court may consider "matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment." *Baker v. Henderson,* 150 F. Supp. 2d 13, 15 (D.D.C. 2001) (citations omitted).

failure to accommodate him in December 2003, *id*. ¶ 33; and (3) hostile work environment based on an apparent incident involving plaintiff's supervisor on March 3, 2004 "for an assignment on March 9, 2004," *id*., ¶ 6, and an incident on January 13, 2004 in which plaintiff alleges he "was insulted and threaten[ed] by a co-worker," *id*., ¶ 20. Of these claims, only the disability discrimination claim is currently before the court for resolution by summary judgment.

### C. The Court Grants Defendant's Motion for Partial Summary Judgment

Defendant argues that plaintiff may not prevail on his disability claim because he cannot show that at the relevant time he was an "individual with a disability" as defined by the Rehabilitation Act or establish any of the other elements of the claim. To survive the pending motion, plaintiff  must present sufficient evidence establishing that (1) he was disabled within the meaning of Act; (2) he was otherwise qualified to perform the essential functions of his job with reasonable accommodation; and (3) his employer was aware of his disability, but either refused to accommodate him or terminated him because of the disability. *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 23 (D.D.C. 2003) (citing cases).

The Rehabilitation Act defines a disability as a "physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B). "Major life activities" are defined by regulation as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The Act's terms are "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002).[4]

---

[4]    Although the *Toyota* case involved claims brought under the ADA, the Supreme Court looked to the regulations interpreting the Rehabilitation Act as one of "two potential sources of guidance . . . ." *Toyota*, 534 U.S. at 193.

In the previous action, as here, plaintiff alleged that he suffered from lower back pain, leg pain, headaches, and blurred vision. *Brown*, 407 F. Supp. 2d at 67; *cf.* Compl. ¶ 34. The court determined that "[t]he most patent deficiency in plaintiff's disability claim is that he fails to demonstrate that his condition limits a major life activity." *Brown*, 407 F. Supp.2d at 68. Here, plaintiff has not alleged any new impairments since his "injury was aggravated by subsequent on the job injuries in 1998 and 2001." Compl. ¶ 33. Rather, he proffers as additional proof of a qualifying disability "the United States Office of Personnel Management['s] approval of his . . . disability as of October 5, 2005." Pl.'s Answer for His Mem. in Conjunction of Def.'s Mot. to Dismiss for Partial Summ. J. ("Pl.'s Sur-reply.") [Dkt. No. 22] at 1 (citing exhibit 5 to his opening opposition brief [Dkt. No. 19]). Plaintiff's Exhibit 5 is OPM's letter granting his application for disability retirement after his separation from government service. *Id.* It is not probative of the nature or extent of plaintiff's impairments at any time during his employment and, therefore, is not sufficient to overcome the court's previous finding against plaintiff on the disability question. The court therefore concludes that plaintiff is collaterally estopped from litigating the disability issue.

In any event, defendant argues that even if plaintiff could now establish that he was disabled under the Act, his claim would fail because defendant was not aware of the disability and did not refuse to accommodate plaintiff's request in December 2003 for a change in his work schedule. A violation of the Rehabilitation Act occurs only when the employer "acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability." *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 897 (D.C. Cir. 1998). "'Reports about which the defendant employer had absolutely no knowledge nor access prior to [acting] cannot serve as the sole evidentiary basis of establishing an element of a prima facie case of disability.'"

*Scarborough v. Natsios*, 190 F. Supp. 2d 5, 23 (D.D.C. 2002) (*quoting Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 8 (D.D.C. 2000)). "An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). But "[t]he accommodation must be tied to a specific disability raised by a plaintiff in his or her request for accommodation." *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 143 (D.D.C. 2004) (*citing Flemming*s, 189 F.3d at 860).

Contrary to defendant's assertion, the record reveals that defendant was aware of plaintiff's impairments in July 2003 sufficiently "to inquire about them, and discern whether accommodations are necessary." Def.'s Ex. 1. It was not until December 4, 2003, however, that plaintiff requested a one-hour change in his work hours from 7:15 a.m. to 3:15 p.m. to 6:15 a.m. to 2:45 p.m. to accommodate his doctor's appointments during the months of September through December. Def.'s Ex. 2. In response, defendant requested "medical documentation that justifies this change in schedule and the duration of this change." *Id*. Plaintiff did not comply with that request. *Id.*, Ex. 3 (Aff. of Ross Morres at 122); Ex. 4 (Aff. of Judith Diaz-Myers at 127).

On December 5, 2003, defendant denied plaintiff's request because such a change "will have a negative impact on the entire work unit due to the section closing security requirements." *Id*. Defendant advised plaintiff, however, that BEP's leave policy permitted employees to use sick leave for doctor's appointments and that "[w]e will be more than happy to grant you sick leave for your doctor appointments." *Id*. According to Diaz-Meyers, who was plaintiff's former office chief, Aff. ¶ 1, plaintiff "had sufficient annual and sick leave balances" to accommodate his medical appointments. *Id*. at 127. Plaintiff has not refuted this claim. Defendant rightly asserts that because plaintiff has not shown how the schedule change would address his specific disability, he has provided no basis for a jury to determine the reasonableness of his request.

Besides, when presented with defendant's offer of flexible leave, no reasonable juror could find that defendant refused plaintiff a reasonable accommodation.

## IV.  CONCLUSION

For the foregoing reasons, the court concludes that plaintiff is procedurally barred from litigating claims based on events that allegedly occurred prior to May 22, 2003, and that defendant is entitled to judgment as a matter of law on the claims brought under the Rehabilitation Act.  The parties shall proceed on the surviving claims of retaliation and hostile work environment based on events that allegedly occurred after May 22, 2003.[5]

An order consistent with this memorandum opinion is separately and contemporaneously issued this 1ˢᵗ day of April 2008.

RICARDO M. URBINA
United States District Judge

---

[5]    In response to plaintiff's request that the court enter "an Order finding that Plaintiff was discriminated against because of his Race, Reprisal, Age and his Physical Disability," Compl. at 10, defendant, perhaps out of an abundance of caution, has argued that plaintiff has not stated any facts to support a claim under the Age Discrimination in Employment Act ("ADEA").  Def.'s Mot. at 11-12.  Plaintiff does not invoke the ADEA in the complaint and has not opposed defendant's argument.  To the extent that an ADEA claim is presented, it is dismissed.