UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Thomas D. Brown, Sr., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   07-0509 (RMU) |
| | : | Document No.:      44 |
| v. | : | |
| | : | |
| | : | |
| Henry M. Paulson, Jr., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**
GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

In what remains of this action brought *pro se* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*., the defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the plaintiff's Title VII claims of retaliation, race discrimination and hostile work environment based on events occurring after May 22, 2003. *See* Memorandum Opinion of Apr. 1, 2008 ("Mem. Op.") [Dkt. No. 31] (resolving all other claims). Upon consideration of the parties' submissions and the relevant parts of the record, the court grants the defendant's motion for summary judgment [Dkt. No. 44].[1]

---

[1] The defendant rightly asserts that the plaintiff's brief in opposition to the current motion mostly addresses dismissed claims or new claims beyond the scope of this litigation. *See* Def.'s Reply Brief in Support of Its Motion for Summary Judgment [Dkt. No. 53] at 2-3. The court will not address the plaintiff's arguments that are inapplicable to the issues at hand.

## II.  BACKGROUND

As previously established, the plaintiff worked at the Department of Treasury's Bureau of Engraving and Printing ("BEP") from 1971 until 2004.  Mem. Op. at 2.  The plaintiff alleges that he began to experience lower back pain from a job-related injury in 1996 and that the "injury was aggravated by subsequent on the job injuries in 1996 and 2001."  Compl. ¶ 6.  "On or about February 28 or March 1, 2001," the plaintiff reported to work late because of his back pain.  *Id*.  Although allegedly the plaintiff was on flex-time, he was reprimanded on March 20, 2001 for being two hours late.  *Id*. ¶ 9.  On April 18, 2001, the plaintiff received "a proposed notice that he was to be considered AWOL and docked for the time he was not at work."  *Id*.  The plaintiff "thereafter" filed an informal EEO complaint challenging the proposed notice.  The April 18 notice was rescinded by the Memorandum of May 1, 2001.  *Id*.  After meeting with Second Line Supervisor Robert Bishop, during which plaintiff stated that he would not sign the Memorandum, plaintiff "believ[ed] that the matter had been resolved."  *Id*.  But he was charged with being absent without leave ("AWOL") "allegedly because he would not sign the May 1, 2001 Memorandum."  *Id*.

On July 13, 2001, the plaintiff was given a notice of proposed suspension for 14 days and "on September 6, 2001, [the plaintiff] was again suspended for a period of three days."[2]  *Id*. ¶ 14.  Meanwhile, "[o]n or about August 6, 2001," the plaintiff's supervisors accused him of committing fraud on his time and attendance sheets.  *Id*. ¶ 7.  On December 10, 2001, the plaintiff "received an Employee Performance Appraisal of Fully Satisfactory."  *Id*. ¶ 15.  By then,

---

[2]  Although it is not clear from the complaint allegations, it appears that in May 2001, the plaintiff was suspended for three days for the events prompting the April 18, 2001 Memorandum.  *See* Compl. ¶¶ 10, 13, 24.

he had filed three EEO complaints. *Id*. ¶ 16. The plaintiff filed another EEO complaint on January 28, 2002, and apparently one other at an unspecified date after January 13, 2004. ¶ 21.

The plaintiff alleges that he was charged as AWOL on November 20, 2003; December 5, 2003; December 15, 2003 and January 13, 2004, *id*. ¶ 24, and was denied a training request on February 17, 2004.[3] The plaintiff also alleges that on January 13, 2004, he "was insulted and threaten[ed] by a co-worker" *id*. ¶ 20, and that on March 3, 2004, he was "harassed and retaliated against by supervisor (Mr. Patrick Reidy) for an assignment (SD)." *Id*. ¶ 6.

In the plaintiff's prior action filed in 2003, this court granted summary judgment for the defendant. *See* Mem. Op. at 4-6 (discussing *Brown v. Snow*, 407 F. Supp.2d 61 (D.D.C. 2005) (Leon, J.)). The plaintiff filed this civil action on March 19, 2007. For reasons stated in the Memorandum Opinion of April 1, 2008, the court dismissed all of the plaintiff's claims except the Title VII claims for retaliation and hostile work environment based on events that allegedly occurred after May 22, 2003. The retaliation claim is based on the following discrete acts: a performance rating on November 4, 2003 of "Achieved Standards," an absence without leave "(AWOL)" charge on December 15, 2003, a warning letter on January 13, 2004, and the denial of a training request submitted on February 17, 2004. The defendant adds that a race discrimination claim based on the aforementioned performance evaluation and training denial also survives. The hostile work environment claim is based on the aforementioned incident on January 13, 2004, involving a co-worker and the encounter with supervisor Reidy in March 2004.

---

[3] The plaintiff does not dispute the defendant's documented correction that he received just one AWOL charge between November 20, 2003 and January 13, 2004, which was on December 15, 2003, and that he received a Letter of Warning on January 13, 2004. *See* Def.'s Mem. of P.&A. at 2, nn.2 & 3.

### III.   ANALYSIS

#### A.   Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Generally, to prevail on a claim of discrimination or retaliation under Title VII, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection". . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2)[he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp.2d 58, 68 (D.D.C. 2004). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.

Similarly, to establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the

protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Scott v. Kempthorne*, 191 Fed.Appx. 622, 2006 WL 1980219, at *3 (10th Cir. 2006). The challenged action is "materially adverse" if it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (other citation omitted). The plaintiff's burden is not great: he "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated (or retaliated) against the employee. *Burdine*, 450 U.S. at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id*. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id*. Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (citation and internal quotation marks omitted).

If the employer presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework-with its presumptions and burdens-disappears, and the sole remaining issue is discrimination vel non." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). "[W]here an employee has suffered an adverse employment action and an employer has asserted

a legitimate, non-discriminatory reason for the decision," the district court, considering "all relevant evidence presented by both parties, then need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [,*inter alia*,] race?" *Brady*, 520 F.3d at 494. A well-supported summary judgment motion may not be defeated by "conclusory, vague[] and . . . unsubstantiated allegations."  *Ginger v. District of Columbia*, 527 F.3d 1340, 1347 (D.C. Cir. 2008).

### B. The Court Grants the Defendant's Motion for Summary Judgment on the Race Discrimination and Retaliation Claims

The defendant argues that no triable issue exists on the plaintiff's claims of race discrimination and retaliation based on the performance rating of "Achieved Standards" received on November 4, 2003, and the denial of a training request on February 17, 2004, because (1) neither challenged action resulted in an adverse action and (2) the plaintiff has not countered its legitimate, neutral reasons for those actions.

#### 1. The Plaintiff Was Not Subjected to an Adverse Employment Action

"An employment action does not support a claim of discrimination unless it has 'materially adverse consequences[.]'" *Ginger*, 527 F.3d at 1343.  To establish an adverse employment action, the plaintiff must meet the statutory requirement that he was discriminated against "with respect to his compensation, terms, conditions, or privileges of employment."  42 U.S.C. 2000e-2(a)(1); accord *Ginger,* 527 F.3d at 1343.  The plaintiff complains about receiving a rating of "Achieved Standards" rather than one of "Exceeded Standards."[4] But even a poor or

---

[4] Prior to the challenged action, the plaintiff had received an "Achieved Standards" rating in 2001 and 2002.  *See* Def's Ex. D at 25; Pl's Depo. [Dkt. No. 44-9] at p. 28.

downgraded performance evaluation, which is not the case here, is not an actionable adverse action under Title VII unless it has affected the employee's grade or salary. *Na'im v. Rice*, 577 F. Supp. 2d 361, 375 (D.D.C. 2008) (Urbina, J.) (citing *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).  Besides, the plaintiff has not substantially countered the defendant's evidence that the "'Achieved Standards' performance rating [was] not a negative rating [and] in no way affected [the plaintiff's] salary, bonus, grade or any other term or condition of his employment." Decl. of Robert Bishop ("Bishop Decl.") [Dkt. No. 44-7]  ¶ 7.

Similarly, the denial of "a single training . . . opportunity" does not constitute a materially adverse action in the absence of a reduction in salary or grade, *Edwards v. U.S. EPA*, 456 F. Supp. 2d 72, 85 (D.D.C. 2006), and the plaintiff has not substantially countered the defendant's evidence that he "did not suffer any tangible adverse employment consequence as a result of the denial of his training request."  Decl. of Ross E. Morres, III ("Morres Decl.") [Dkt. No. 44-8] ¶ 10.

2. The Plaintiff Has Not Adequately Rebutted the Defendant's Neutral Reasons

As the plaintiff's first-line supervisor responsible for the challenged performance evaluation, Robert Bishop consulted BEP's Performance Evaluation Plan (Def.'s Ex. G).[5] Bishop Decl. ¶¶ 4-5.  He based his rating on "five job elements" discussed in the Plan, his personal observations of the plaintiff's job performance, and those of other supervisors "who had directly observed Mr. Brown's job performance during the rating period[.]" *Id*. ¶ 5.  Bishop determined that the plaintiff did not merit a rating of "Exceed Standards" because, among other reasons, the plaintiff "did not submit written suggestions to management on how to improve staff performance in the specified area," a specific consideration set forth in the Plan, and he "did not

---

[5] The defendant's exhibits are found at docket numbers 44-10 and 44-11.

consistently fulfill any of his various employment responsibilities at a level that would have warranted" the higher rating. *Id*. ¶ 6. The plaintiff has not rebutted the defendant's legitimate, neutral explanation for the performance rating with any evidence from which a jury could infer discriminatory or retaliatory animus.

The plaintiff's third-line supervisor, Ross E. Morres, denied the training request for eight computer software courses because the plaintiff had not completed self-guided tutorials that he was advised to do in January 2002, when a similar request of the plaintiff's was denied, and some of the requested courses were not "essential to [the plaintiff's] immediate job function." Def.'s Ex. L; Morres Decl. ¶¶ 4, 10-11. Again, the plaintiff has not rebutted the defendant's legitimate, neutral explanation for denying his training request with any evidence from which a jury could infer discriminatory or retaliatory animus.

The plaintiff also accuses the defendant of retaliating against him by charging him as AWOL for 15 minutes on December 15, 2003, and by issuing a Letter of Warning on January 13, 2004. The plaintiff called in sick on December 8, 2003, but appeared at his job site at 8:15 a.m. Def.'s Ex. B at 2. The next day, the plaintiff submitted a sick leave slip for his absence between 7:15 a.m. and 8:15 a.m. *Id*. When his supervisors, Patrick Reidy and Bishop, told the plaintiff to correct his slip to reflect his start time as 7:00 a.m., Def.'s Ex. H, the plaintiff refused because he claimed that his start time was 7:15 a.m. The plaintiff therefore was charged as AWOL between 7:00 a.m. and 7:15 a.m. *Id*.

The plaintiff has presented no evidence to support his start time as 7:15 a.m. Given the defendant's evidence establishing the plaintiff's work hours as 7:00 a.m. to 3:00 p.m, Decl. of Patrick Reidy ("Reidy Decl.") [Dkt. No. 47] ¶ 7 & Ex. 1; Def.'s Ex. A (plaintiff's bi-weekly time sheets), no reasonable juror could find for the plaintiff on the AWOL charge. Similarly, no

reasonable juror could find for the plaintiff on the Letter of Warning because the plaintiff has not disputed that it was issued to him for failing to follow his supervisors' instructions to submit a leave slip reflecting "his official 7:00 a.m. start time." Bishop Decl. ¶ 8; *see* Def.'s Ex. J. Nor has the plaintiff disputed with any evidence that the letter was simply a warning that did not result in any disciplinary action or "in any way affect the terms or conditions of [his] employment." Bishop Decl. ¶ 8.

In the absence of any proffered evidence from which a reasonable jury may infer that the defendant's decisions were mere pretexts for racial discrimination or retaliation, the court concludes that the defendant is entitled to judgment as a matter of law on the plaintiff's Title VII claims of race discrimination and retaliation.

## C. The Court Grants the Defendant's Motion for Summary Judgment on the Hostile Work Environment Claim

Consistent with the goal of Title VII's proscription against employment discrimination based on race and other suspect classifications, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Such an environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003) (quoting *Meritor,* 477 U.S. at 65). On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Thus, to determine whether a hostile work environment exists, the court looks to

the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *Id*. at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp.2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

The plaintiff's hostile work environment claim is based on two encounters with a co-worker where he allegedly felt "insulted" and "threaten[ed]" by her alleged aggressive behavior and foul comments, Def.'s Ex. N (Pl.'s Letter to the Division Chief), and a memo issued to the plaintiff by his supervisor on March 5, 2004, expressing concern about his progress on a project that was to be completed by March 9, 2004." Reidy Decl. ¶¶ 5-6. Neither of these events, separately or collectively, comes anywhere near the level of behavior required to state a hostile work environment claim.[6] Nor do the alleged facts provide a basis for a reasonable jury to find that the co-worker or the supervisor was motivated by the plaintiff's race.

## IV.  CONCLUSION

For the foregoing reasons, the court determines that no triable issue is presented on the

---

[6] To the extent that the plaintiff is claiming a pattern or practice of hostility stemming from events that occurred prior to May 2003, he may not proceed because Judge Leon previously determined that the plaintiff had failed to show that the earlier alleged conduct "was sufficiently severe or pervasive to be actionable under Title VII." *Brown*, 407 F. Supp. 2d at 69.

remaining claims of this action and concludes that the defendant is entitled to judgment as a matter of law. An order consistent with this memorandum opinion is separately and contemporaneously issued this 17th day of February 2009.

RICARDO M. URBINA<br>
United States District Judge